### A97A0476. SCOTT v. SCOTT.
(489 SE2d 117)

SMITH, Judge.

Scot Scott, the father of a twelve-year-old girl and a ten-year-old boy, instituted a custody modification action against the children's mother, Melanie Scott. We granted his application for discretionary appeal of the final order of the superior court. Because we conclude that the trial court did not abuse its discretion in awarding joint custody to both natural parents and in placing primary physical custody in Ms. Scott, we affirm.

The parties were married in 1981. Their daughter and son were born in 1983 and 1985 respectively. Divorce was granted in North Carolina in 1987. By consent order, Ms. Scott was awarded custody of the children, and Mr. Scott was granted "reasonable" visitation. Mr. Scott subsequently relocated to Wisconsin and remarried. He and his current wife have an infant son. Ms. Scott relocated to Oregon and then to Georgia. She did not remarry.

In July 1995, Mr. Scott petitioned for custody of both children. Although he maintains that changed circumstances have negatively impacted both children, he asserts that the son is the child who has become seriously at risk.

The court found that subsequent to the divorce, several changes materially affected the welfare of the children, particularly the son. However, the court additionally found that these changes were not significant enough to warrant a change of custody as to either child and that remaining with Ms. Scott would be in both children's best interest if she complies with a court-ordered treatment plan for the son. The court's order states that if she does not, custody of the son "shall immediately change to that of the [father] upon petition to this court." The order further provides that the parties shall have joint

legal custody of the children with Ms. Scott retaining primary physical custody; that Ms. Scott shall confer with Mr. Scott on all issues regarding the children's health, education, and religious training; but that Ms. Scott shall make the final decision regarding these issues whenever the parties are unable to agree. The order also establishes a new visitation schedule, which details weekend and holiday visitation.

1. Mr. Scott contests the court's finding that the changes in the children's lives are not significant enough to warrant a change of custody. We have reviewed the evidence presented at the custody modification hearing that the minor son suffers from behavioral problems. It is not disputed that the son requires discipline in school several times each week because of his unruly and even aggressive classroom behavior. It is also true that on two occasions, he was referred to juvenile court because of his physically aggressive behavior at school. Now in the fifth grade, he was also a discipline problem when he was in this school in the third grade, although there has been some improvement in his behavior since then.

We also note that in the summer of 1994, the children spent two months with Mr. Scott and his wife in Wisconsin. The next summer, the son returned for another two-month visit. Both Mr. Scott and his wife testified that as a result of discipline and structure during these summer visits, he was well behaved notwithstanding the fact that he was not on any medication. They also testified that while the two children were in their home, they functioned well together. Ms. Scott testified that she started noting positive changes in the son after he returned from Wisconsin and that Ms. Scott and the son were benefiting from the counseling sessions being conducted at the time of the hearing below.

Mr. Scott's testimony shows that prior to the summer of 1994, he visited with his daughter twice and with his son once. Although Mr. Scott testified that he could not afford visitation before 1994, he admitted that in 1992 he purchased a new boat for $5,000. Ms. Scott testified that Mr. Scott instituted this proceeding after she obtained an upward modification of child support and that he threatened to "get back at her" by "taking her kids away."

A CASA worker investigated and filed a report with the court. She found that in the boy's current family setting, he is not being provided with the structure and consistency in parenting he needs. She recommended that custody be awarded to Mr. Scott with court-ordered counseling and that the daughter's custody remain with Ms. Scott but also with court-ordered counseling. Alternatively, the CASA worker recommended that custody of both children be awarded to Mr. Scott.

A court may award a change of custody of a minor child "only

upon a showing of a change in material conditions or circumstances of the parties or the child, subsequent to the original decree of divorce and award of custody, and that the change of custody would be in the best interests of the child. [Cits.]" *Blackburn v. Blackburn,* 168 Ga. App. 66, 70 (1) (308 SE2d 193) (1983). See also *In the Interest of S. D. J.,* 215 Ga. App. 779 (452 SE2d 155) (1994).

Despite the evidence presented concerning the son's discipline problems and the problems experienced by Ms. Scott in providing a structured environment, and despite the CASA worker's testimony, we cannot say the trial court abused its discretion in making its award. Had we been the factfinder below, we might well have weighed the evidence differently. But this is not our duty as an appellate court. Instead, we must apply the well-settled standard concerning change in custody: "In determining whether a material change of condition has occurred, the trial court is vested with a discretion which will not be controlled by this court absent abuse. This court will affirm the trial court's decision if there is any reasonable evidence to support it." (Citation and punctuation omitted.) *Hayes v. Hayes,* 199 Ga. App. 132, 133 (404 SE2d 276) (1991). "Where the trial judge exercises a sound legal discretion looking to the best interests of the child, this court will not interfere with [the trial court's] judgment unless it is shown that [its] discretion was abused. [Cits.]" *Sullivan v. Sullivan,* 241 Ga. 7, 8 (243 SE2d 35) (1978). "[I]f there is reasonable evidence in the record to support the decision . . ., [it] must prevail as a final judgment, and it will be affirmed on appeal. [Cits.]" *Crumbley v. Stewart,* 238 Ga. 169, 170 (231 SE2d 772) (1977).

Because the trial court is vested with broad discretion in making decisions concerning custody, and we must affirm the court's decision if supported by reasonable evidence, we are constrained to affirm the juvenile court's judgment. It is true that the child experienced behavioral problems in school and at home from a young age. The juvenile court noted this and other problems, including Ms. Scott's relationship with a man in jail,[1] but nevertheless allowed her to retain custody. The court clearly took these factors into consideration in making its decision. Evidence was also presented, however, that the son, though still experiencing behavioral difficulties at the time of the hearing, had shown some improvement in school over the preceding two years and that his behavior at home had also improved. Testimony also was given that at the time of the hearing, Ms. Scott and the son had benefited from counseling on a regular basis. Moreover, from the time of the divorce in 1987 until the summer of 1994, Mr.

---

[1] The mother testified at the hearing that she had no contact with this individual for the preceding three months.

Scott saw his son only once, and then for only a five hour period. It is also noteworthy that Mr. Scott initiated custody modification proceedings approximately one month after Ms. Scott was successful in acquiring a court-ordered increase in child support payments.

Although Ms. Scott has not been perfect with regard to the care and attention given her son, the juvenile court's decision to allow Ms. Scott to retain custody is supported by reasonable evidence and must be affirmed.

We note Mr. Scott's argument that the juvenile court committed reversible error by making contradictory findings of fact and conclusions of law. In its findings of fact, the court recited: "The court finds that since the parties' divorce there have been several changes of circumstance which materially [affect] the interest and welfare of the children especially that of [the son's] special needs, however the court finds at this time such do not warrant a change of either child at this time." In its conclusions of law the court then stated that "there has not been a significant change in circumstances" in the lives of the children. We do not agree with Mr. Scott that these statements are so contradictory as to constitute reversible error. In its findings of fact, although the court found that material changes had occurred, it also found that these changes were not sufficient to warrant a change in custody. While perhaps inartfully worded, this finding is not inconsistent with the court's legal conclusion that the changes were not significant. We find no error.

In addition, we do not agree with Mr. Scott's contention that "[a] trial court commits reversible error by failing to conclude that a significant change of circumstances affecting the child has occurred where the uncontradicted evidence shows the noncustodian provides a home where an unruly child changes into a sociable child." *Crumbley v. Stewart*, supra, relied upon by Mr. Scott for this argument, neither states nor represents this proposition. In *Crumbley*, the minor child's behavior did change for the better after he moved into his father's home. Custody had previously been awarded to the child's mother. Id. at 169. The trial court, however, declined to change custody to the father. Id. Concluding that the trial court used an improper standard, the Supreme Court remanded the case, directing the trial court to "exercise a legal discretion in ruling whether or not there are changed conditions affecting the welfare of the child." Id. at 170. The Supreme Court clearly did not hold that the child's behavior change mandated a change of custody; that decision was expressly left for the trier of fact.

2. Mr. Scott challenges the court's grant of final decision-making authority to Ms. Scott on issues regarding the health, education, and religious training of the children; he argues that the court awarded joint custody without complying with OCGA § 19-9-6 (2) and in viola-

tion of public policy.

" 'Joint legal custody' means both parents have equal rights and responsibilities for major decisions concerning the child, including the child's education, health care, and religious training; provided, however, that the court may designate one parent to have sole power to make certain decisions while both parents retain equal rights and responsibilities for other decisions." OCGA § 19-9-6 (2). Joint legal custody allows both parents' involvement in making major decisions concerning the child. *In the Interest of A. R. B.*, 209 Ga. App. 324, 327 (2) (433 SE2d 411) (1993) (physical precedent only). In this case, the court designated Ms. Scott as the primary physical custodian and as having the sole power to make decisions concerning the children's education, health, and religious training if the parents are unable to agree. Under the court order, Mr. Scott retains equal decision-making responsibility in other areas and an opportunity to share decision-making with respect to the three named areas. This does not contravene the statute or public policy.

3. Mr. Scott next complains of the visitation schedule as unduly burdensome. The juvenile court's carefully crafted order defining visitation belies this contention. The order recites that Mr. Scott may visit with the children at any time if both parents can agree to such visitation and also provides for minimum reasonable visitation times if the parents cannot reach mutual agreement. The order then extensively details weekend, summer, spring and Christmas vacation, and other holiday visitation. It further provides for telephone visitation. Although summer visitation is limited to thirty days despite the fact that the son exhibited improved behavior during his two month stay with Mr. Scott, the schedule nevertheless provides for reasonable, even liberal, visitation. We therefore cannot say that the juvenile court abused its discretion.

4. Mr. Scott also contends the juvenile court erroneously failed "to give serious consideration" to the possibility of joint physical custody under OCGA § 19-9-6. We do not agree. "[W]here . . . the trial court finds both parents fit and proper, the trial court must give due consideration to the feasibility of a joint custody arrangement." (Footnote omitted.) *Baldwin v. Baldwin*, 265 Ga. 465 (458 SE2d 126) (1995). Although the juvenile court did not make a finding that both parents were equally fit, the record is clear that the trial court gave serious consideration to joint custody options available under OCGA § 19-9-6 and chose one of those options: the court awarded joint legal custody of the children and carefully set forth the parameters of that custody. Indeed, the court's order tracked the language of OCGA § 19-9-6 (2) by requiring the parents to confer "on all issues regarding the health, education and religious training of the children." The fact that the court did not award joint physical custody is no indication

that it failed to consider seriously all options available under OCGA § 19-9-6, and we cannot say that the court abused its discretion.

5. Finally, Mr. Scott challenges that part of the order which provides that if Ms. Scott does not comply with the treatment plan for the son, custody shall immediately change to Mr. Scott upon petition to the court. Citing *Weaver v. Jones*, 260 Ga. 493 (396 SE2d 890) (1990), he argues that requiring a petition to effectuate a self-executing change of custody is contrary to law and public policy. In *Weaver*, the parties' divorce decree contained a self-executing change of custody and child support provision requiring the mother to be responsible for child support if the parties' minor child, upon reaching the age of 14, elected to live with his father. The Supreme Court, approving the use of this self-executing provision, stated: "[S]ince the child's selection is controlling absent a finding of unfitness . . . a self-executing change serves the interest of judicial economy by effecting the change of custody and the establishment of child support obligations without the necessity of court proceedings in a case, such as this one, where there are no allegations of parental unfitness." Id. at 494 (3).

*Weaver* does not *require* that custody change without resort to court proceedings. Judicial economy was served in that case because the 14-year-old child's decision to live with his father controlled the issue of custody; court intervention simply was not necessary. This case is distinguished from *Weaver*; some court intervention would be necessary in order to determine whether Ms. Scott complied with the juvenile court's mandate. Moreover, the juvenile court's order sets out a narrow, easily discernible circumstance under which custody of the minor son will change: Ms. Scott's failure to seek testing and treatment for the son. If a petition is filed, the only issue to be decided would be whether Ms. Scott complied with the clear mandate of the order. Although a petition is required, court intervention is necessary under the order in only a limited circumstance, and the policy favoring judicial economy is served. We find no error.

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., McMurray, P. J., Ruffin and Eldridge, JJ., concur. Beasley, J., concurs in the judgment only.*

DECIDED JULY 15, 1997.

*Susan P. Tate, Monzer J. Mansour*, for appellant.
*William R. Ashe*, for appellee.