**FOURTH DIVISION**
**PHIPPS, C. J.,**
**ANDREWS, P. J. and McFADDEN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 11, 2013**

# In the Court of Appeals of Georgia

A11A0719. AMERICAN HOME SERVICES, INC. v. A FAST
   SIGN COMPANY, INC.

McFADDEN, Judge.

This is an appeal from the judgment entered in class action litigation involving the Telephone Consumer Protection Act of 1991, 47 USC § 227 ("TCPA"). In October 2003, A Fast Sign Company, Inc. d/b/a Fastsigns ("Fastsigns") filed a class action complaint against American Home Services, Inc. ("AHS"), alleging that AHS had violated the TCPA by sending unsolicited facsimile advertisements to fax machines. The trial court certified the proposed class, and we affirmed that certification. *American Home Svcs. v. A Fast Sign Co.*, 287 Ga. App. 161 (651 SE2d 119) (2007).

The trial court then granted partial summary judgment to Fastsigns. The court found that the evidence was undisputed that AHS contracted with Sunbelt Communications, Inc. to send 318,000 fax advertisements to fax machines belonging to businesses and individuals throughout metro Atlanta. The court found that AHS sent six particular faxes that were actually received, but that whether AHS sent other faxes was an issue of fact. It held that AHS's violation of the TCPA was willful and knowing. It also held that the businesses with which AHS had an established business relationship, which can be a defense to allegations of a TCPA violation, had been removed from the class, so that the established business relationship defense was not in issue. Finally, the court held that the class was entitled to an award of attorney fees, the amount of which would be determined later.

The court then conducted a bench trial to determine the number of faxes sent, ultimately determining that AHS had sent 306,000 unsolicited fax advertisements to fax machines. Based on that finding, the court entered judgment against AHS for $459 million, calculating the award by multiplying 306,000 by $1,500, the statutory amount of damages per knowing or willful violation of the TCPA. AHS appealed, and in *American Home Svcs. v. A Fast Sign Co.*, 310 Ga. App. 315 (713 SE2d 396) (2011), we vacated the judgment and remanded, holding that the trial court

2

erroneously entered judgment based on the number of fax advertisements sent, rather than the number received. Id. at 317-318 (1). The Supreme Court granted Fastsigns' petition for certiorari and reversed our judgment, holding that under the TCPA, "a sender is liable for the unsolicited advertisements it attempts to send to fax machines, whether or not the transmission is completed or received by the targeted recipient." *A Fast Sign Co. v. American Home Svcs.*, 291 Ga. 844, 847 (734 SE2d 31) (2012). The Supreme Court remanded the case for our consideration of AHS's remaining enumerations of error, which we had not addressed given our ruling vacating and remanding the judgment. Id. at 847-848. We now vacate our opinion, adopt the Supreme Court's opinion as our own, and address AHS's remaining enumerations of error.

AHS argues that the evidence does not support the judgment. We find that some evidence supports the judgment. Nonetheless, the judgment must be vacated and the case remanded because the judgment does not exclude fax recipients who were excluded from the class, and it does not comply with OCGA § 9-11-23 (c) because it does not describe the class. Since the evidence presented at the bench trial is sufficient to support the judgment, we conclude that any trial court error regarding an alleged admission in judicio and the application of a negative spoliation inference

3

was harmless. We also hold that "willful or knowing" as used in the TCPA means that the violator knew that he was doing the act in question, even if he did not know his act was a violation of the statute. We hold that the trial court did not err by requiring AHS to prove any established business relationships in order to invoke the established business relationship defense. We reject AHS's argument that the trial court granted the claimants a windfall recovery in excess of the statutory maximum amount of damages. Finally, we decline to address AHS's argument that the judgment violates the common law and constitutional due process.

(a) *Some evidence supports the trial court's judgment regarding the sending of faxes.*

"In a bench trial, as here, the trial court sits as the trier of fact and the court's findings will not be set aside unless clearly erroneous. Since the clearly erroneous test is the same as the any evidence rule, an appellate court will not disturb the factual findings of the trial court when there is any evidence to sustain such findings." *Brandenburg v. All-Fleet Refinishing*, 252 Ga. App. 40, 41 (555 SE2d 508) (2001) (citation omitted). "[T]his holds true even if the findings are based upon circumstantial evidence and the reasonable inferences which flow from them." *Roscoe v. State*, 286 Ga. 325, 327 (687 SE2d 455) (2009) (citation omitted).

4

Fastsigns introduced into evidence the five contracts AHS entered with Sunbelt for Sunbelt to send 318,000 fax advertisements over the course of ten months. It introduced the testimony of Wendell Driver, the founder of AHS, who said that he assumed the faxes had been sent and that he had no reason to think otherwise. Driver testified that AHS received business because of the fax advertisements and that he thought the faxes were effective. Driver also testified that AHS paid Sunbelt in accordance with the contracts. Driver testified that AHS never provided Sunbelt with anything in writing from any potential recipients authorizing the sending of the fax advertisements and that he did not deny that all faxes sent on behalf of AHS were unsolicited by the recipients.

Fastsigns' computer expert testified that he was familiar with Sunbelt's operations from his work in a number of cases involving Sunbelt. He had examined the hard drives from Sunbelt's computers in Atlanta, and determined that the fax log files intentionally had been deleted and purged. But he was able to retrieve from the hard drives Sunbelt's database of fax numbers, and based on his experience with Sunbelt, he was confident that those were the numbers to which Sunbelt sent faxes on behalf of AHS. The expert testified that Sunbelt had the capacity and capability to fulfill the contracts it had entered with AHS. He also testified that Sunbelt's

standard business practice was not to obtain permission from potential recipients before sending faxes. Finally, he testified that based on his experience with Sunbelt, in his opinion it was "much more likely than not" that Sunbelt had fulfilled its contracts with AHS. Fastsigns previously had introduced at the summary judgment stage the affidavits of six class members, who testified that they had received AHS faxes. This is some evidence to support the trial court's judgment.

(b) *Any trial court error regarding an alleged admission in judicio and the application of a spoliation negative inference was harmless.*

AHS argues that the trial court erred in relying on what it found to be an admission in judicio in reaching its judgment. It argues that the trial court also erred in relying on a negative inference because of Sunbelt's spoliation of evidence. We conclude that any error was harmless.

In the "statement of material facts" section of its brief to this court in the class certification appeal, AHS wrote that, "On behalf of AHS, Sunbelt sent approximately 306,000 fax advertisements to potential customers in the Atlanta area." AHS argues that the trial court erred in treating this statement as an admission in judicio and in relying on it in making its factual finding that AHS sent 306,000 faxes. It argues that the trial court also erred in applying to it a negative inference because of Sunbelt's

6

spoliation of evidence, the fax logs. But given the trial court's explicit finding that the evidence admitted at trial showed that it was more likely than not the unsolicited faxes had been sent to fax machines, any error in its reference to the alleged admission in judicio and the spoliation inference is harmless. "An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful." *In the Interest of S. N. H.*, 300 Ga. App. 321, 329 (4) (685 SE2d 290) (2009) (citation omitted).

(c) *Nonetheless, the judgment must be vacated because it does not take into account those recipients excluded from the class and it does not comply with OCGA § 9-11-23.*

As noted above, Fastsigns introduced evidence that AHS sent 318,000 faxes. The trial court found that the evidence showed AHS sent 306,000 faxes. (AHS does not complain about this discrepancy, which is in its favor.) But the trial court's judgment does not appear to take into account those fax recipients who were excluded from the class: 375 persons with whom AHS had established business relationships, the judges of all trial and appellate courts in the state of Georgia and an undetermined number of AHS and Sunbelt employees and agents. No evidence was presented at the bench trial on these numbers.

7

Further, OCGA § 9-11-23 (c) (3) required the trial court to describe in the judgment the members of the class, but it did not. Accordingly, as Fastsigns concedes, the judgment does not comply with OCGA § 9-11-23 (c).

For these reasons, the judgment must be vacated. The trial court must determine and then exclude from its calculation those fax recipients who were excluded from the class. It then must re-enter the judgment in accordance with OCGA § 9-11-23 (c) (3). *Jones v. Forest Lake Village Homeowners Assn.,* 304 Ga. App. 495, 500-501 (1) (c) (696 SE2d 453) (2010).

2. *The meaning of "willful or knowing" in the TCPA*.

The TCPA provides for recovery of either actual damages or $500 per violation, but allows a court "in its discretion" to increase the award up to a maximum of treble damages if the defendant "willfully or knowingly violated" the statute. 47 USC § 227 (b) (3). "Willfully" and "knowingly" are not defined in the TCPA.

AHS argues that, in order to impose treble damages, the trial court was required to find that knew that its actions violated the TCPA, not simply that it willfully or knowingly sent the faxes. The FCC, in interpreting another provision of the TCPA, has held that "'[w]illful' in this context means that the violator knew that he was doing the act in question. . . . A violator need not know that his action or inaction

8

constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mortgage*, 22 FCC Rcd 9453, 9470, n. 86 (citations omitted). "[T]he interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight and deference." *Center for a Sustainable Coast v. Coastal Marshlands Protection Comm.*, 284 Ga. 736, 741 (2) (670 SE2d 429) (2008) (citation omitted).

Other courts have held the same. See *Stewart v. Regent Asset Mgmt. Solutions*, 2011 U.S. Dist. LEXIS 50046 (N.D. Ga. 2011); *Sengenberger v. Credit Control Svcs.*, 2010 U.S. Dist. LEXIS 43874 (N.D. Ill. 2010)*; Charvat v. Ryan*, 879 NE2d 765, 770-771 (Ohio 2007) (concluding that knowledge of the TCPA is not required to find either a willful or knowing violation in support of treble damages). See also *Cox v. Garvin*, 278 Ga. 903, 906 (607 SE2d 549) (2005) (in interpreting the term "willfully" in the context of securities statutes, Georgia Supreme Court declined "to adopt a requirement that the person intended to violate the law; the key is that the person intended to do the act prohibited by statute;" court found that its interpretation was in accordance with agency's interpretation, the interpretations of other state courts, and the remedial purpose of the statutes).

We conclude that a plaintiff "need not prove that defendant had knowledge of the TCPA's provisions in order to establish that the defendant willfully or knowingly violated the TCPA." *Stewart*, 2011 U.S. Dist. LEXIS 50046 at 19. AHS admitted that it hired Sunbelt to send advertising faxes on its behalf. This is sufficient to make the violation "willful" within the meaning of the statute. See *Sengenberger*, 2010 U.S. Dist. LEXIS 43874 at 17.

3. *The burden of proving an established business relationship.*

AHS argues that the trial court erred by requiring it to prove that it had an established business relationship with the fax recipients instead of requiring Fastsigns to prove that AHS did not have an established business relationship with the fax recipients. In its order granting Fastsigns partial summary judgment, the trial court found that AHS had not provided any evidence establishing a triable issue on the established business relationship defense, noting that all entities for whom AHS had records or knowledge of an established business relationship had been excluded from the class.

In its brief to this court in the class certification appeal, AHS argued that class certification was inappropriate because Fastsigns had not excluded all proposed class members who had an established business relationship with AHS, but only those with

10

a documented established business relationship. AHS asserted in its brief that this argument did not go to the burden of proof on the issue, but rather only to the issue of class certification. But the issue regarding the burden of proof was encompassed within AHS's argument: it essentially argued that Fastsigns had the burden of proving with whom AHS had established business relationships, so that those individuals could be excluded from the class. Absent such proof, AHS argued, the proposed class lacked commonality and it was error to certify it.

In our opinion affirming the class certification, we rejected that argument. *American Home Svcs.*, 287 Ga. App. 161, cert. denied. Relying on a recent clarification of the Federal Communications Commission, we held "that an advertiser seeking to invoke the established business relationship exemption to TCPA liability bears the burden of demonstrating the existence of any such established business relationship." Id. at 163 (citing Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 71 FR 25967-01 (May 3, 2006)). We affirmed the certification of the class, which excluded those with whom AHS had shown an established business relationship, implicitly rejecting the argument that AHS makes here. This is the law of the case, and we are bound by it. OCGA § 9-11-60 (h) ("[A]ny ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all

11

subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be."). We observe that the holding is consistent with the principle that "the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits." *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (I) (68 SCt 822, 92 LEd 1196) (1948).

4. *The judgment did not grant a windfall recovery in excess of the statutory maximum amount of damages.*

AHS argues that the judgment must be reversed because it awards damages exceeding the statutory maximum of $1,500 per knowing or willful violation. 47 USC § 227 (b) (3). **We agree that 47 USC § 227 (b) (3) permits a person or entity to recover no more than $1,500 in damages for each willful and knowing violation. But we do not agree that the judgment, as entered, awards persons or entities, other than the class representative, more than that amount. The trial court awarded $45,000 to the class representative and then held that, after fees and expenses had been deducted, "[a]ll remaining sums shall be distributed equally to the remaining class members of the certified class." Contrary to AHS's argument, the court did not "award[] claimants equal shares in a $459,000,000**

12

fund"; it awarded *class members* an equal share in the class fund after the distribution to the class representative and the payment of attorney fees and costs. In other words, the court did not order that all the remaining sums would be distributed equally among those class members who made a claim, simply that it would be distributed among all members of the class. It is of course likely that not all class members will make a claim, thereby leaving undistributed amounts in the class fund. The trial court's judgment did not address this contingency -- which has not yet occurred -- and therefore it is not before us in this appeal.

5. *Common law and due process.*

AHS argues that the judgment is excessive and violates the common law. But this is a statutory proceeding, and AHS does not explain how the common law overrides the statute. It also argues that the judgment violates due process. We will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point. *Atlanta Independent School System v. Lane*, 266 Ga. 657 (1) (469 SE2d 22) (1996); *Ogletree v. State*, 211 Ga. App. 845, 846 (1) (440 SE2d 732) (1994). AHS does not point to any trial court ruling on this issue.

13

*Judgment vacated and case remanded. Phipps, C. J., and Andrews, P.J., concur.*