**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 10, 2016**

# In the Court of Appeals of Georgia

A16A0723. MARKS v. SOLES et al.

BRANCH, Judge.

In March 2013, three children were removed from their mother's custody and placed with their fathers after the children were found living with the mother, Audrea Marks, in filthy conditions. More than a year later, the trial court granted joint legal custody in the first and second of Marks's children to those children's father, appellee Jason Soles, as well as to Marks, with Soles receiving primary physical custody. The trial court also awarded joint legal custody of Marks's third child to that child's father, appellee Brad Lane, as well as to Marks and the child's paternal grandparents, with the paternal grandparents receiving primary physical custody. On appeal from these orders, Marks asserts inter alia that the trial court erred when it awarded joint custody of the third child to its paternal grandparents and when it imposed retroactive

child support payments on Marks. We reverse the grant of joint legal and primary physical custody in the third child to the paternal grandparents and the imposition of retroactive child support payments on Marks, vacate the remainder of the trial court's judgment, and remand for further proceedings.

"A trial court faced with a petition for modification of child custody is charged with exercising its discretion to determine what is in the child's best interest." *Viskup v. Viskup*, 291 Ga. 103, 105 (2) (727 SE2d 97) (2012) (citations omitted). "A trial court's decision regarding a change in custody / visitation will be upheld on appeal unless it is shown that the court clearly abused its discretion." *Vines v. Vines*, 292 Ga. 550, 552 (2) (739 SE2d 374) (2013) (citation omitted). "Where there is any evidence to support the trial court's ruling [on custody or visitation], a reviewing court cannot say there was an abuse of discretion." Id.

Thus viewed in favor of the trial court's judgment, the record shows that Marks and Soles had two children, born in June 2000 and March 2003. Marks and Soles were divorced in 2005, and their divorce decree awarded child support from Soles to Marks in the amount of $100 per week. Marks and Lane's child was born in March 2007.

In March 2012, Marks filed a garnishment action against Soles for failure to pay child support. On May 30, 2012, the trial court issued a summons of continuing garnishment to Soles's employer (the garnishee). On August 21, 2012, Soles filed a traverse to the garnishment.

As of October 2012, Marks and Soles had joint legal custody of the first and second children, with the mother having primary physical custody. As of the same date, Marks and Lane had joint legal custody of the third child, with Marks having primary physical custody. On March 9, 2013, Marks was arrested for criminal offenses including cruelty to children, disorderly conduct, and failure to keep animals in sanitary conditions. These charges were filed after officers from the Bulloch County Sheriff's Office, who were called to Marks's home, found the three children at issue living in a home with dog feces throughout, including on the clothes, shoes, and bedding of the children. Rat droppings were found on the kitchen counter, and one of the children told an aunt that she had not eaten anything since her lunch at school the previous day.

On March 11, 2013, the trial court granted Lane's ex parte petition for temporary custody of the third child. On March 19, 2013, the trial court granted Soles's ex parte petition for temporary custody of the first and second children. On

April 12, 2013, the trial court entered a temporary order in which it consolidated Marks's garnishment and the fathers' custody modification actions; confirmed its transfer of physical custody of the first and second children to Soles and of the third child to Lane; suspended the child support payments of both fathers; and placed the proceeds of Marks's garnishment action in the court registry.

Marks testified at a hearing held on May 7, 2013,[1] that the filthy conditions in the house from which the children were taken were created by unknown persons who broke in while she and the children were asleep. Marks also testified that after the children were removed from her custody, she moved to Florida, where she lived with Soles's mother while Lane was serving time for methamphetamine possession. The paternal grandmother of the third child testified that she had assisted with care for that child throughout his life and that, while the child had repeated kindergarten while in Marks's custody, he was now excelling in school. After hearing testimony from thirteen witnesses, the trial court continued custody in the fathers, with "assistance from both grandparents"; granted Marks supervised visitation; and ordered counseling for the children.

---

[1] A transcript of this hearing is not included in the appellate record.

4

On August 2, 2013, the trial court denied Marks's motion to dismiss Soles's traverse to the garnishment action. At a hearing on September 10, 2013, Marks testified that she had returned to Georgia, where she was living with her parents; that her father was a convicted child molester; and that she could receive the children for visitation at a house she was planning to rent from her employer. The trial court maintained supervised visitation with Marks and counseling for Marks and the children. The trial court also ordered the parties to submit combined child support worksheets and noted that it was considering awarding Marks up to $12,000 in child support arrears from Soles. On March 27, 2014, the trial court ordered that Soles pay an arrearage of $5000 at the rate of $597 per month. The court also ordered, however, that Marks pay Soles $597 per month and Lane $523 per month in child support, with both awards retroactive to March 1, 2013.[2]

On September 16, 2014, the paternal grandparents of the third child moved to intervene. Shortly afterward, on October 3, 2014, the trial court held a hearing on

---

[2] The garnishment of $200 a month from Soles's earnings was to be credited to his amount due, and Lane's payments were to be credited to his child support arrearage of $3,806.83. The amount of Lane's former monthly child support payments does not appear in the record. Neither Lane nor his parents (the third child's grandparents) has filed an appellee's brief.

Marks's ex parte petition for modification of custody.[3] This hearing included appearances from counsel for both fathers and Marks, and with testimony from the children's two counselors, the children's guardian ad litem, the third child's paternal grandmother, and Marks herself. At the outset of the hearing, counsel for Lane noted that whether the court conducted a final hearing or not, "whatever the court decides, it's all going to be the same evidence regardless," and the court agreed that it "[couldn't] imagine the evidence not bleeding over into everything that we're involved with here." Marks made no objection to this characterization.

During the hearing, Marks admitted that her home was undergoing renovation and that she was undergoing medication for her anxiety, which sometimes resulted in panic attacks. Marks also testified that her income had decreased since the filing of her last financial affidavit in September 2013 and that she did not receive regular paychecks from her new job. Marks asserted in closing argument that she was not unfit and that she should receive primary physical custody of all three children. After the conclusion of the witnesses's testimony and argument, the trial court met with all three children in chambers.

---

[3] Marks's ex parte petition has not been included in the appellate record.

On October 14, 2014, the trial court dismissed Marks's garnishment on the ground that any child support Soles had owed her was eliminated by the child support Marks now owed to Soles.

On December 12, 2014, the trial court entered two orders. The first included findings of fact that (1) the cruelty-to-children charges against Marks were still pending; (2) her job had "undefined duties" for an employer who had refused to obey a subpoena; (3) Marks had found a suitable home in Savannah and had done "substantial improvements" on it, but "claims that she has limited funds"; (4) Marks "continues to attempt to manipulate the children by discussing pending litigation and trying to impose guilt on them for her present situation"; (5) the third child was being cared for by his paternal grandparents, an arrangement which had "provided stability for" him; and (6) the counselors and the guardian ad litem had "expressed their belief that the current custody arrangement is beneficial to the children." The Court then concluded "by clear and convincing evidence that custody in [Marks] would be emotionally harmful to the children." Attached to this first order was a parenting plan as to the third child only, which awarded joint legal custody in that child to Marks, Lane, and the child's paternal grandparents, with primary physical custody awarded to the grandparents; a completed child support worksheet establishing presumptive

7

amounts of child support at $354.10 for Marks and $292.90 for Lane; and a child support order addendum finding that Lane had no arrears due and that Marks and Lane were each responsible for $250 a month in child support.

Although the parenting plan, the child support worksheet, and the addendum attached to this first order referred only to the third child, the trial court's second order of December 12, 2014 held that "[t]he parties shall have joint legal custody of the [first and second children], with [their] father being the primary physical custodian." The second order also held that the parenting plan submitted as to the third child "is approved for [the first and second] children and is incorporated herein in its entirety," and that Marks owed Soles $495 in child support "to begin immediately." This order did not refer to or vacate the trial court's March 2014 order imposing retroactive child support payments on Marks.

Marks moved for a new trial and for reconsideration. In an extensive order entered on July 10, 2015, the trial court represented that it had granted the third child's grandparents' motion to intervene "orally" on October 3, 2014.[4] The court then made findings of fact as to Marks's unfitness for custody and concluded that

---

[4] The record of the hearing held on that day does not support this determination. On May 11, 2015, however, the trial court entered an order granting the motion to intervene nunc pro tunc to October 3, 2014.

8

"ample evidence" supported that finding. The court also concluded that the fathers and grandparents "had shown a material change in circumstances [a]ffecting the welfare of all of the children as required by law"; that "clear and convincing" evidence showed that the third child's best interests would be served by "remaining with his [paternal] grandparents"; and that it was "in the best interest of [the first and second children] to remain in the primary custody of their father, considering all the factors in OCGA § 19-9-3." The court therefore denied the motion for reconsideration and for new trial.

On appeal from these rulings,[5] Marks asserts that the trial court erred in considering evidence from the hearing on temporary custody during the final hearing, in granting joint physical custody in the third child to its paternal grandparents, and in adopting only one parenting plan (as to the third child) in orders modifying custody as to all three children. Marks also argues that the court erred in considering Soles's traverse to Marks's garnishment action, in imposing child support payments on Marks retroactive to March 2013, in failing to consider the statutory Child Support Guidelines before awarding child support from Marks to Soles, and in reducing Soles's child support arrearage amount from $12,000 to $5,000.

[5] See OCGA § 5-6-34 (a) (11). Soles has filed a pro se appellee's brief.

1. Marks does not challenge the sufficiency of the evidence supporting the trial court's finding that she had become unfit such that custody in the three children was properly modified. Instead, Marks asserts that the trial court relied on evidence introduced at the temporary custody hearing without giving the mother sufficient notice. See *Pace v. Pace*, 287 Ga. 899, 901 (700 SE2d 571) (2010). We disagree.

"[T]he nature and quality of the evidence presented at a temporary hearing is likely to be different than that which is ultimately presented at the final hearing[.]" *Pace*, 287 Ga. at 901. "[P]arties should ordinarily expect that only that evidence which their opponent sees fit to offer at the final, more formal hearing will be relied on to support the permanent custody award." Id. (citations omitted). Thus, "absent express notice to the parties, it is error for a trial court to rely on evidence from the temporary hearing in making its final custody determination." Id. But "we will not assume that the judge considered anything outside of the evidence in rendering his judgment." *Carroll v. Carroll*, 307 Ga. App. 143, 144 (704 SE2d 450) (2010) (punctuation and footnote omitted).

As a preliminary matter, Marks's assertion that "very little if anything was discussed at the final hearing" is not supported by the record, which includes a transcript of 228 pages (excluding exhibits) showing testimony from Marks, the

10

children's two counselors, the guardian ad litem, and the third child's paternal grandmother. The record also shows that although the trial court commented in the middle of the proceedings that "I don't think we're ready for a final hearing," the court gave Marks notice of its intention to consider all the evidence before it at the outset of the hearing, and also noted without objection that "we'll go as far as we need to go today." Moreover, at no time during this hearing were the conditions in the Marks home that led to the grant of primary physical custody to the fathers in dispute; indeed, the exhibits at the final hearing included news reports and photographs as to those conditions. Marks has thus shown neither that the court "relied [on evidence from any of the temporary hearings] nor that the testimony of the numerous witnesses presented at the final hearing was insufficient to support the trial court's findings[.]" *Carroll*, 307 Ga. App. at 144.

2. Marks argues that the trial court erred when it granted joint legal custody in the third child to her, Lane, and the child's paternal grandparents, and when it granted joint physical custody to the grandparents. We agree.

OCGA § 19-9-6 defines the terms "joint custody," "joint legal custody," and "joint physical custody" as follows:

11

(4) "Joint custody" means joint legal custody, joint physical custody, or both joint legal custody and joint physical custody. In making an order for joint custody, the judge may order joint legal custody without ordering joint physical custody.

(5) "Joint legal custody" means *both parents have equal rights and responsibilities* for major decisions concerning the child, including the child's education, health care, extracurricular activities, and religious training; provided, however, that the judge may designate one parent to have sole power to make certain decisions while both parents retain equal rights and responsibilities for other decisions.

(6) "Joint physical custody" means that physical custody is shared *by the parents* in such a way as to assure the child of substantially equal time and contact with both parents.

(Emphasis supplied.) On their face, subsections (5) and (6) of OCGA § 19-9-6 give the right of joint legal or physical custody only to "parents."

In June 2015, moreover, shortly before the trial court denied Marks's motion for new trial, the Supreme Court of Georgia emphasized that "joint custody arrangements do not include third parties when one or both parents are suitable custodians." *Stone v. Stone*, 297 Ga. 451 (774 SE2d 681) (2015) (footnote omitted). The Court quoted OCGA § 19-9-3 (a) (1), which provides that when custody is an issue between a child's parents, "there shall be no prima-facie right to the custody of

12

the child in the father or the mother," as well as OCGA § 19-9-3 (d), which provides that

> [i]t is the express policy of this state to encourage that a child has continuing contact with parents and grandparents who have shown the ability to act in the best interest of the child and to encourage parents to share in the rights and responsibilities of raising their child after such parents have separated or dissolved their marriage or relationship.

As the Court explained, OCGA § 19-9-3 (d) "includes grandparents with parents for purposes of contact (visitation) with the minor child, but, when rights and responsibilities (custody) are in consideration, the statute excludes grandparents and encourages sharing between the parents only." *Stone*, 297 Ga. at 453. The Court found further support for its holding in OCGA § 19-9-6 (5) and (11),[6] which "exclude grandparents from sharing joint custody with a parent" such that "persons may have sole legal custody of a child when no parent is suitable for custody, but only parents may have joint legal custody." Id. at 454.

Here, the trial court awarded joint legal custody in the third child to the father, Marks, and the paternal grandparents, and joint physical custody in that child to the

---

[6] OCGA § 19-9-6 (11) defines "sole custody" as meaning that "a person, including, but not limited to, a parent, has been awarded permanent custody of a child by a court order."

13

paternal grandparents alone. We also note that the trial court did not distinguish between legal and physical custody in its order on reconsideration, and thus did not explain how it could have awarded the mother joint legal custody having found her unfit for what it called "primary custody." Absent a finding that both parents were unfit, the trial court was not authorized to award any legal or physical custody to the third child's paternal grandparents. OCGA § 19-9-6 (4), (5); *Stone*, 297 Ga. at 454. Because the trial court abused its discretion when it awarded joint legal custody of the third child to Marks, Lane, and the paternal grandparents and joint physical custody of that child to the grandparents, and because the trial court maintained its grant of joint legal custody of all three children to Marks in the face of its own finding that she was unfit for "custody," we vacate the trial court's order and remand the case for further proceedings consistent with this opinion. Id. at 455 (vacating award of joint legal custody to child's father and maternal grandmother).

3. Marks also asserts that the trial court erred when it adopted a parenting plan only as to the third child and then, in a second order filed the same day, applied that plan "in its entirety" to the first and second children. Again, we agree.

OCGA § 19-9-1 (a) provides in relevant part that "[t]he final order in any legal action involving the custody of a child, including modification actions, shall

14

incorporate a permanent parenting plan." The statute does not require a trial court "to incorporate a particular party's parenting plan" or to make explicit findings of fact and conclusions of law "as to why it accepted or failed to accept a particular parenting plan." *Moore v. Moore-McKinney*, 297 Ga. App. 703, 710-711 (3) (678 SE2d 152) (2009).

Here, the trial court's second order of December 12, 2014 adopted a parenting plan that named only the third child and that granted custody of that child to the mother, Lane, and the paternal grandparents "in its entirety" as to the first and second children. The court's second order also granted joint custody in the first and second children to "the parties" listed on that order, which includes not only Marks and Soles but also Lane, who is not the father of the first and second children. As we have held in Division 2, the parenting plan incorporated into the second order was erroneous on its face in awarding joint legal custody in the third child to his paternal grandparents, with the result that the trial court also erred when it incorporated that parenting plan as to the first and second children. We therefore remand with direction that any future modification of custody should include at least two new and discrete parenting plans, one for the third child and one for the first and second children. See *McKinney*, 297

15

Ga. App. at 711 (3) (remanding for entry of a parenting plan when the trial court's order failed to incorporate one into its final order).

4. Marks also argues that the court erred in (a) considering Soles's traverse to the garnishment, (b) imposing child support payments on Marks retroactive to March 2013, (c) failing to consider the statutory Child Support Guidelines before awarding child support from Marks to Soles, and (d) reducing Soles's child support arrearage amount from $12,000 to $5,000. We agree in part.

(a) A judgment for child support, such as that imposed by the 2005 divorce decree on Soles, is "a money judgment subject to collection by postjudgment garnishment." *Stoker v. Severin*, 292 Ga. App. 870, 872 (1) (a) (665 SE2d 913) (2008) (citations omitted). A new statutory scheme concerning garnishments, OCGA § 18-4-1 et seq., became effective on May 12, 2016.[7] Although OCGA § 18-4-10 now provides that a garnishment defendant's "answer shall be filed . . . not sooner than 30 days and not later than 45 days after the service of the summons" to the garnishment action, former OCGA § 18-4-65 provided that "when garnishment proceedings are based upon a judgment, the defendant, by traverse of the plaintiff's affidavit, may

---

[7] See 2016 Ga. L., p. 8, § 1 (SB 255).

16

challenge the existence of the judgment or the amount claimed due thereon."[8] Here, Soles filed his defendant's traverse to Marks's garnishment action some months after that action was filed. The trial court did not err when it considered the traverse, however, because a garnishment defendant is not barred under former OCGA § 18-4-65 from filing a traverse after any specific time.

(b) The trial court erred as a matter of law, however, when it imposed retroactive child support payments on Marks.

> A permanent child support judgment is res judicata and enforceable until modified, vacated or set aside. Until a final decree amending the child support is properly entered in the modification proceeding the permanent judgment stands.

*Jarrett v. Jarrett*, 259 Ga. 560, 561 (1) (385 SE2d 279) (1989) (citations and punctuation omitted). A modification of a child support award requires "a substantial

---

[8] See also former OCGA § 18-4-93 (a defendant to a garnishment action may, "at any time before a judgment is entered on the garnishee's answer," "become a party to the garnishment by filing a traverse to the plaintiff's affidavit stating that the affidavit is untrue or legally insufficient"). At least one court has noted that former OCGA § 18-4-65, which was in effect when this garnishment action was filed (March 2012), did not specify any deadline by which a defendant's traverse must be filed after the filing of a garnishment action. See *In re Thompson*, 2013 WL 8214644 (Bankr. N. D. Ga., April 30, 2013) (former OCGA § 18-4-65 "does not set a deadline by which a traverse must be filed and does not state or imply that the failure to file a traverse divests the defendant of any interest in garnished property"). Id. at *7 (c).

17

change in either parent's income and financial status or the needs of the child."

OCGA § 19-6-15 (k) (1). The same statute also provides that a trial court

> may modify and revise the previous judgment, in accordance with the changed circumstances, income and financial status of either parent, or in the needs of the child, if such change or changes are satisfactorily proven so as to warrant the modification and revision and such modification and revisions are in the child's best interest.

OCGA § 19-6-15 (k) (4).

"A child support judgment cannot be modified retroactively," however. *Jarrett*, 259 Ga. at 561 (1) (citation omitted); see also OCGA § 19-6-17 (e) ("Any payment or installment of support under any child support order is, on and after the date due[,] [n]ot subject to retroactive modification.") Rather, "'[a]n order modifying child support may operate only prospectively.'" *Wright v. Burch*, 331 Ga. App. 839, 843 (1) (c) (771 SE2d 490) (2015) (punctuation omitted), quoting *Robertson v. Robertson*, 266 Ga. 516, 518 (1) (467 SE2d 556) (1996). Thus although a trial court is authorized to "'modify child support obligations and enter orders regarding repayment of past-due amounts . . . , it cannot simply forgive or reduce the past-due amount owed under a valid child support order.'" *Wright*, 331 Ga. App. at 883-844 (1) (c), quoting *Ga. Dept. of Human Resources v. Prater*, 278 Ga. App. 900, 903 (2) (630 SE2d 145)

18

(2006). Likewise, a trial court is not authorized to modify a child support obligation "on a retroactive basis [by] increasing past payments on a monthly basis." *Rose v. Thorpe*, 240 Ga. App. 834, 835 (525 SE2d 381) (1999).

Although the trial court's second order of December 2014 sets a new and apparently prospective child support award from Marks to Soles, that order did not vacate the court's March 2014 imposition of child support on Marks retroactive to March 2013. We also note that the record does not include any evidence that Marks owed child support before March 27, 2014. In the absence of evidence that Marks owed any child support payments before March 2014, we must reverse the trial court's March 2014 imposition of such payments on Marks retroactively to March 2013. *Wright*, 331 Ga. App. at 844 (1) (c) (trial court erred when it enforced a settlement reducing a party's arrearage as to child support payments past due); *Rose*, 240 Ga. App. at 835 (reversing trial court's use of modification action to recoup past child support on the basis of a party's past under-reporting of income because a child support judgment "may be modified on a prospective basis only").

(c) The record also shows that the trial court used Uniform Child Support Guidelines only as to the third child, but entered child support awards as to the first and second children nonetheless. This was also legal error.

OCGA § 19-6-15 (k) (4) provides that a court modifying custody "shall enter a written order specifying the basis for the modification, if any, and shall include all of the information set forth in paragraph (2) of subsection (c) of this Code section," which provides in turn that the court "[s]hall (A) [s]pecify in what sum certain amount and from which parent the child is entitled to permanent support as determined by use of the worksheet" prepared by the parties or child support services.[9] The Child Support Guidelines of OCGA § 19-6-15 "'are mandatory and must be considered by a trier of fact setting the amount of child support.'" *Evans v. Evans*, 285 Ga. 319 (1) (676 SE2d 180) (2009), quoting *Swanson v. Swanson*, 276 Ga. 566, 567 (1) (580 SE2d 526) (2003). Thus the trial court erred when it entered a child support award as to the first and second children without using the Child Support Guidelines set out in OCGA § 19-6-15 to calculate that award. *Evans*, 285 Ga. at 320 (reversing child support order that failed to calculate a party's gross income as required by OCGA § 19-6-15 (f) (1) (D)).

---

[9] See OCGA § 19-6-15 (m) (1) ("Schedules and worksheets shall be prepared by the parties for purposes of calculating the amount of child support. In child support services cases in which neither parent prepared a worksheet, the court may rely on the worksheet prepared by child support services as a basis for its order. Information from the schedules shall be entered on the child support worksheet.").

20

(d) In light of our vacatur and remand for reconsideration of the amount of child support due from Marks to Soles, Marks's contention as to the trial court's erroneous reduction of Soles's child support arrearage from $12,000 to $5,000 remains for those proceedings.

In sum, we reverse the trial court's award of joint custody of the third child to the paternal grandparents and its imposition of retroactive child support payments on Marks, vacate the remainder of the trial court's judgment, and remand for further proceedings consistent with this opinion.

*Judgment reversed in part and vacated in part, and case remanded with direction. Ellington, P. J., and Mercier, J., concur.*