# FIFTH DIVISION
## RICKMAN, C. J.,
## MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 31, 2021**

# In the Court of Appeals of Georgia

A21A0969. PERRY v. JENKINS.

PHIPPS, Senior Appellate Judge.

This is the second time this child custody case has come before us. In *Perry v. Jenkins*, 352 Ga. App. XXV (Case No. A19A1309) (Oct. 29, 2019) (unpublished), Tyler Perry appealed from the trial court's order granting joint legal custody of his minor child to him and the child's mother, Kaitlyn Jenkins, but primary physical custody to Jenkins. We reversed and remanded with instructions. Id., slip op. at 1-2. On remand, the trial court issued a new custody order in which it once again awarded the parties joint legal custody, with primary physical custody and final decision-making power resting with Jenkins. It is from this order that Perry now appeals, contending that (i) the trial court failed to follow our directive on remand to give due consideration to joint physical custody; (ii) the trial court improperly limited his

visitation with the child before the child's fifth birthday; and (iii) the trial court's custody ruling violates his rights to due process and equal protection. For the reasons that follow, we affirm.

We set forth the underlying facts in our prior opinion:

Jenkins and Perry dated for approximately five years before ending their relationship. During the relationship, Jenkins and Perry had a son together [in 2015]. The child was approximately two years old when the couple split. After the break up, Jenkins and the child went to live with her parents and Perry continued to be actively involved in the child's life. . . . Jenkins limited Perry's visitation time with the child after Perry began dating someone that Jenkins did not approve of. . . . .

Perry petitioned the trial court for legitimation, custody, visitation, and child support. Following a temporary hearing in May 2018, . . . the trial court found Perry the legal father of the child, granted Jenkins primary physical custody of the child, and granted Perry visitation with the child every other weekend. During the final hearing in October 2018, Perry testified that he wanted primary physical custody of the child, or in the alternative, to share primary custody of the child with Jenkins. After the final hearing, . . . the trial court awarded primary physical custody to Jenkins noting that "I sincerely believe a small child that's been with the mother needs to stay with the mother." The trial court also kept the visitation order issued following the temporary hearing in place until the child reaches the age of five. Perry then

2

requested the trial court issue written findings of fact, from which he [previously appealed].

*Perry*, slip op. at 2-3. In the prior appeal, we reversed the trial court's custody ruling and remanded the case to the trial court for it to make findings and conclusions in accordance with the applicable statutory scheme "and to give due consideration to the issue of joint physical custody." Id., slip op. at 6.

On remand, the trial court expressly noted that the parties do not dispute that each parent is "proper and fit" but nevertheless concluded that joint physical custody is not in the child's best interest based on several factual findings. In particular, the court found that changing custody would be detrimental to the child's best interest because Jenkins has cared for, bonded with, and maintained a stable, nurturing, and safe environment for the child since his birth. According to the court, Jenkins has the greatest knowledge and familiarity with the child and his needs, having taken the child to all medical appointments. The court concluded that maintaining continuity in this regard is in the child's best interest.

The court further found that Perry works between 40 and 48 hours each week, while Jenkins, who currently is unemployed, has only worked part-time since the child's birth. Consequently, the court determined that Perry's work schedule will limit

3

his availability to spend time with the child and require the child to spend time with another caregiver if the parties share physical custody, whereas Jenkins's schedule affords more time for the child to be with a parent. On a related note, the court found that the distance between each parent's home – which takes at least 40 minutes to travel each way – also weighs against a joint physical custody arrangement. The court awarded Perry visitation from 9:00 a.m. to 5:00 p.m. every other Saturday and Sunday until the child turned five, at which time a comprehensive visitation schedule attached to the court's order (which now includes overnight visits) took effect.[1]

1. On appeal, Perry first argues that the trial court failed to give due consideration to joint physical custody and instead simply added "magic words" to its prior custody order to comply with our instructions on remand. In that regard, he primarily takes issue with the depth of the trial court's analysis, faulting the court for failing to explain in more detail how each of its factual findings necessarily weighs against joint physical custody, while Perry provides several reasons why such findings arguably weigh in favor of shared custody. Although we agree that the facts

---

[1] The schedule attached to the trial court's order appears to be the local judicial circuit's standard visitation schedule. The child turned five in 2020.

before the trial court could have supported shared custody, we discern no abuse of discretion under the deferential standard of review we must apply here.[2]

It is the policy of this State "to encourage parents to share in the rights and responsibilities of raising their child after such parents have separated." OCGA § 19-9-3 (d); *Marks v. Soles*, 339 Ga. App. 380, 386 (2) (793 SE2d 587) (2016); accord *Baldwin v. Baldwin*, 265 Ga. 465, 465 (458 SE2d 126) (1995). In accordance with that policy, the General Assembly has defined "joint custody" to mean "joint legal custody, joint physical custody, or both," and "joint legal custody" to mean that

> both parents have equal rights and responsibilities for major decisions concerning the child, including the child's education, health care, extracurricular activities, and religious training; provided, however, that the judge may designate one parent to have sole power to make certain decisions while both parents retain equal rights and responsibilities for other decisions.

OCGA § 19-9-6 (4)-(5). This statute provides a court "with options of awarding joint legal custody, joint physical custody, or both, where appropriate." *In the Interest of*

---

[2] Given our ruling in this regard, we assume, without deciding, that Perry properly preserved his challenges to the adequacy of the reasons underlying the trial court's custody ruling, and we therefore express no opinion on Jenkins's claim to the contrary.

*A. R. B.*, 209 Ga. App. 324, 326 (2) (433 SE2d 411) (1993) (physical precedent only).

It also evinces a legislative intent "to afford greater equality between parents in

fostering relationships with their children so that the best interests of each child can

be served" and to favor "equally shared parenting obligations and opportunities" so

as to place children "first in the constellation of individual interests and desires." Id.

Thus, as we noted in our prior opinion in this case,

> "[the] child . . . has a right to shared parenting when both [parents] are
> equally suited to provide it. Inherent in the express public policy is a
> recognition of the child's right to equal access and opportunity with both
> parents, the right to be guided and nurtured by both parents, [and] the
> right to have major decisions made by the application of both parents'
> wisdom, judgment and experience."

*Perry*, slip op. at 5-6 (quoting *In the Interest of A. R. B.*, 209 Ga. App. at 327 (3)).

Nevertheless, where a trial court "determines that both parents are fit and

equally capable of caring for the child, the court must consider joint custody but is not

*required* to enter such an order unless it specifically finds that to do so would be in

the best interest of the child." *Baldwin*, 265 Ga. at 465 (emphasis in original). Thus,

> [w]here a trial court exercises its discretion and awards custody to one
> fit parent over the other fit parent, [an appellate c]ourt will not interfere
> with that decision unless the evidence shows the trial court clearly

6

abused its discretion. If there is any evidence to support the decision of the trial court, [an appellate c]ourt cannot say there was an abuse of discretion.

*Brock v. Brock*, 279 Ga. 119, 121 (3) (610 SE2d 29) (2005) (citations omitted); accord *Arthur v. Arthur*, 293 Ga. 63, 64 (1) (743 SE2d 420) (2013); *Marks*, 339 Ga. App. at 380. See also *Scott v. Scott*, 276 Ga. 372, 373 (578 SE2d 876) (2003) ("Whether particular circumstances warrant a change in custody is a fact question determined under the unique situation in each individual case."). In making that determination, the trial court's "primary duty" is to determine solely what is in the child's best interest and will best promote the child's welfare and happiness. *Baldwin*, 265 Ga. at 465-466. See also OCGA § 19-9-3 (a) (2); accord *Scott*, 276 Ga. at 373 ("The best interests of the child are controlling as to custody changes."). We emphasize that the trial court has "very broad discretion" in this regard. See *Urquhart v. Urquhart*, 272 Ga. 548, 549 (1) (533 SE2d 80) (2000).

Applying the deferential standard of review here, "we cannot say the trial court abused its discretion in making its award. Had we been the factfinder below, we might well have weighed the evidence differently. But this is not our duty as an appellate court." See *Scott v. Scott*, 227 Ga. App. 346, 348 (1) (489 SE2d 117)

7

(1997). See also generally *Williams v. State*, 328 Ga. App. 876, 880 (1) (763 SE2d 261) (2014) (a proper application of abuse-of-discretion review recognizes that there is a "range of possible conclusions the trial judge may reach" and that this Court often will affirm a trial court ruling under an abuse-of-discretion standard "even though we would have gone the other way had it been our call") (citation and punctuation omitted); *McDonald v. Garden Svcs., Inc.*, 163 Ga. App. 851, 852-853 (295 SE2d 551) (1982) (absent an abuse of discretion, this Court will not substitute its judgment for the trial court's, even if individual members of this Court may have reached a different conclusion).

As discussed above, the trial court based its custody ruling on the following factual findings: (i) Jenkins has cared for the child since his birth and has the greatest knowledge of the child's needs; (ii) her work schedule affords her more time to care for the child; and (iii) the distance between each parent's home weighs against joint physical custody. While it arguably would have been preferable for the trial court here to have engaged in a more robust analysis, we conclude that it has done at least the minimum that was required of it on remand, and we discern no abuse of discretion

8

in its application of the law to the facts in this case.[3] See *Arthur*, 293 Ga. at 64 (1) (the trial court did not abuse its discretion in awarding joint legal custody to both parents and primary physical custody to the mother where neither parent contended that the other was unfit, and "the final judgment contain[ed] a finding of fact supported by the evidence that [was] sufficient to support the award" and "from which this Court [could] make a meaningful appellate review"); *Brock*, 279 Ga. at 121 (3) (finding no abuse of discretion where the trial court awarded the parents joint legal custody, with primary physical custody to the father, where the evidence indicated "that both parents were fit and proper parents and each had a loving relationship with the children," and some evidence supported the custody ruling); *Urquhart*, 272 Ga. at 549-550 (1) (even though the trial court found both parents fit, it did not abuse its discretion by awarding sole custody to the father after finding that the parents did not communicate and cooperate as needed for joint custody).

2. Perry also challenges the visitation schedule that was in effect before the child reached age five. It is undisputed, however, that the child turned five in 2020,

---

[3] Should the parties' or child's circumstances change, Perry may then seek a change in custody. See OCGA § 19-9-3 (b) (a trial court may modify custody "based upon a showing of a change in any material conditions or circumstances of a party or the child").

9

and those provisions thus no longer are in effect. Consequently, any potential challenge to those provisions is now moot, as a ruling will have no practical effect on Perry's visitation. See *Hughes v. Ga. Dept. of Corrections*, 267 Ga. App. 440, 443 (2) (600 SE2d 383) (2004) ("An issue is moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy.") (citation and punctuation omitted). See also *Davis v. Creative Land Dev. Corp.*, 230 Ga. 47, 48-49 (195 SE2d 411) (1973) (a claim for relief becomes moot when the relief no longer can be granted).

And although Perry urges us to apply one or more exceptions to the mootness doctrine, we see no reason to do so here. Georgia has adopted "a narrow exception to the doctrine of mootness when the issue is capable of repetition and yet evades review." *Hopkins v. Hamby Corp.*, 273 Ga. 19, 19 (538 SE2d 37) (2000). Perry's contentions that the now-expired visitation schedule issues he seeks to challenge are likely to recur frequently and evade review are premised entirely on his conclusory assertions to that effect and are unsupported by legal authority, empirical data, or any other objective basis. We therefore decline to find an exception to the mootness

10

doctrine here.[4] See generally *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014) ("[A]n appellant must support enumerations of error with argument and citation of authority, and mere conclusory statements are not the type of meaningful argument contemplated by our rules.") (citations and punctuation omitted).

3. In his final enumeration of error, Perry contends that the trial court's custody rulings violate his constitutional rights to substantive and procedural due process and to equal protection. "However, appellate courts will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on

[4] The *Hopkins* Court noted that other states have recognized an exception to the mootness doctrine that applies when "(1) the public interest will be hurt if the question is not immediately decided; (2) the matter involved is likely to recur frequently; (3) it involves a duty of government or government's relationship with its citizens; and (4) the same difficulty that prevented the appeal from being heard in time is likely to again prevent a decision." 273 Ga. at 19. Regardless of whether those criteria may apply in this state, Perry's failure to provide any support for his mootness claim dooms it under either test.

To the extent that any of Perry's appellate challenges may be read to reach the now-operative visitation provisions in the trial court's order, we note that the order provides for "liberal" visitation if the parents can agree to such and provides for minimum reasonable visitation times if they cannot agree. It also extensively details weekend, summer, and other holiday visitation and further provides for telephone visitation. These provisions are strikingly similar to the visitation schedule we found to be well within the trial court's discretion in *Scott*, 227 Ga. App. at 350 (3), and the same result follows here.

11

the point, and the record in the present case contains no such ruling." *Price v. Grehofsky*, 349 Ga. App. 214, 222 (2) (825 SE2d 594) (2019) (citation and punctuation omitted) (declining to address – because the trial court issued no ruling on – the appellant's claim that the denial of her petition for adoption violated her equal protection rights); accord *American Home Svcs., Inc. v. A Fast Sign Co., Inc.*, 322 Ga. App. 791, 797 (5) (747 SE2d 205) (2013) (declining to address – because the trial court issued no ruling on – the appellant's claim that the trial court's final judgment violated its right to due process). We therefore do not address this enumeration or transfer this case to the Supreme Court. See *Price*, 349 Ga. App. at 222 (2); *Griffin v. Burden*, 281 Ga. App. 496, 497 (2) (636 SE2d 686) (2006).

*Judgment affirmed. Rickman, C. J., and McFadden, P. J., concur.*