**SECOND DIVISION
MILLER, P. J.,
HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**May 21, 2021**

# In the Court of Appeals of Georgia

A21A0356. STEEDLEY v. GILBRETH.

PIPKIN, Judge.

This case involving a custody dispute between Laura Steedley, the mother of seven-year-old C. B. G., and Diane Gilbreth, the child's maternal grandmother,[1] has made several appearances before this Court. Most recently,[2] in *Steedley v. Gilbreth*, 352 Ga. App. 179 (834 SE2d 301) (2019) (*Steedley* II), we vacated a temporary order granting custody to the Grandmother and remanded to the trial court for additional analysis and findings of fact required by *Clark v. Wade*, 273 Ga. 587, 598-599 (IV) (544 SE2d 99) (2001). *Steedley II*, 352 Ga. App. at 181 (1). The trial court then issued

---

[1] Hereinafter, we refer to Steedley as "the Mother" and to Gilbreth as "the Grandmother."

[2] We dismissed a previous appeal as untimely. *Steedley v. Gilbreth*, Case No. A19A0327 (dismissed October 4, 2018).

a joint custody order, awarding the Mother "primary physical custody" and granting the Grandmother visitation rights one week and one weekend a month; the order also required the parties to "work together for the best interest of the child" and to "cooperate on holidays and birthdays." The Mother appeals,[3] and we now reverse.

As we explained in *Steedley II*, "[c]ustody disputes between a parent and close third-party relatives, including grandparents, are governed by OCGA § 19-7-1 (b.1)." 352 Ga. App. at 180. Although in *Steedley II*, we remanded this case to the trial court with instructions for the trial court to engage in proper factfinding and the analysis required by *Clark* to support its custody award to the Grandmother, that is not what the trial court did; instead, citing OCGA § 19-9-3, the court entered an order setting

---

[3] The Grandmother has not filed a brief on appeal. Thus, as there is nothing here to controvert the facts as set out by the Mother, we may accept those facts as true. See Court of Appeals Rule 25 (b) (1). In any event, the underlying facts are set out in *Steedley II*, 352 Ga. App. at 179-180, and need not be repeated here.

out a joint custody arrangement between the Mother and the Grandmother.[4] This was error.

On its face, OCGA § 19-9-3 governs custody and visitation between a child's parents, and provides no authority for an award of joint custody between a parent and other relatives, including grandparents.[5] As our Supreme Court explained in *Stone v. Stone*, 297 Ga. 451 (774 SE2d 681) (2015),

> "[i]n the Georgia Code, our legislature has clearly indicated that joint custody arrangements do not include third parties when one or both parents are suitable custodians. . . . Quite explicitly, the statute includes grandparents with parents for purposes of contact (visitation) with the minor child, but, when rights and responsibilities (custody) are in

---

[4] Although the trial court did not use the phrase "joint custody" in its order, we agree with the Mother that it should be considered as such. The court recited only OCGA § 19-9-3 in its order, which pertains to custody arrangements between parents, and granted "primary," but not sole physical custody, to the mother and otherwise required the parties to work together for the best interest of the child and to cooperate for holidays and birthdays. These are all aspects of joint legal custody, which can only be shared by parents. See OCGA § 19-9-6 (5); *Stone v. Stone*, 297 Ga. 451,453 (774 SE2d 681) (2015).

[5] The trial court stated in its order that OCGA § 19-9-3 authorized the consideration of the child's relationship with close family members in making a custody determination. Although OCGA § 19-9-3 (a) (3) (B) authorizes the court to consider the child's relationship with siblings or stepsiblings in assessing the best interest of the child, the consideration of this factor is in the context of deciding a custody contest between parents.

3

> consideration, the statute excludes grandparents and encourages sharing between the parents only."

Id at 452-453.

Thus, while a grandparent, or other listed relative, may obtain sole custody of a child under certain circumstances, see *Clark v. Wade,* 273 Ga. at 598-599 (IV), "in situations where a parent is suitable to exercise custody over a child, [neither OCGA § 19-7-1 (b.1) nor any other code section] allow[s] that parental custody to be limited by a joint custody arrangement with a grandparent or, for that matter, any other person." *Stone*, 297 Ga. at 455. By granting the mother primary physical custody, the trial court in this case necessarily determined that the Mother was "suitable" to have custody of her child, and the trial court was not authorized to enter a joint custody arrangement with the Grandmother. E.g., *Jewell v. McGinnis*, 341 Ga. App. 896, 896 (1) (802 SE2d 306) (2017) ("The Supreme Court of Georgia and this Court have both held that a third party may have *sole legal custody* of a child when no parent is suitable for custody; however, Georgia statutory law only supports *joint legal custody* arrangements between parents."); *Marks v. Soles*, 339 Ga. App. 380, 386 (2) (793 SE2d 587) (2016) ("Absent a finding that both parents were unfit, the trial court was not authorized to award any legal or physical custody to the . . . child's paternal

4

grandparents."); *Sheffield v. Sheffield*, 338 Ga. App. 667, 669 (791 SE2d 428) (2016) ("while a third party may have sole legal custody of a child when no parent is suitable for custody, Georgia law only allows joint custody arrangements between parents.").

We note however, that OCGA § 19-9-3 (d) does encourage contact with grandparents, see *Stone*, 297 Ga. at 455, and nothing in our holding should be read to preclude the Grandmother from seeking, or the trial court from granting, reasonable visitation rights with her grandson. However, the mechanism for obtaining such visitation is set out in OCGA § 19-7-3, not 19-9-3. See *Stone*, 297 Ga. at 455. Further, in order to grant a family member reasonable visitation rights under OCGA § 19-7-3 (c) (1), the court must first find by clear and convincing evidence that the health or welfare of the child would be harmed unless such visitation is granted and the best interests of the child would be served by such visitation.[6] Id at 454; see also *Davis v. Cicala*, 356 Ga. App. 873, 875-876 (849 SE2d 728) (2020). Here, the trial court did not recite OCGA § 19-7-3 in its order, and it did not make the findings which would be necessary to grant the Grandmother reasonable visitation rights

---

[6] We note that our Supreme Court has declared subsection (d) of OCGA § 19-7-3 unconstitutional because it allowed a court to award visitation to a parent of a deceased, incapacitated, or incarcerated parent, over the objection of a fit parent and without any showing that the visitation was required to keep the child from actual or threatened harm. *Patten v. Ardis*, 304 Ga. 140, 140 (816 SE2d 633) (2018).

5

pursuant to subsection (c) (1).[7] Accordingly, we do not address whether the Grandmother would be entitled to such rights should she decide to pursue them. Based on the foregoing, the trial court's order is reversed and the case is remanded with direction for the trial court to enter an order awarding sole physical and legal custody to the mother.[8]

*Judgment reversed. Miller, P. J., and Hodges, J., concur.*

---

[7] The trial court did recite that the Grandmother had been a constant and significant presence in the child's life, that she had helped the mother raise him, and that at times the child had been in her custody. However, these findings of fact fall short of what is required by OCGA § 19-7-3 (c) (1). See *Davis*, 356 Ga. App. at 876-877 (2). Additionally, we note how difficult these custody cases can be for all concerned, including trial courts. Although we have no doubt of the good intentions of the trial court, due to the constitutional underpinnings in these type cases, it is imperative that trial courts adhere to the strictures laid out by Georgia law.

[8] The Mother raises a number of other contentions in her brief on appeal, but, in light of our holding, we do not need to reach her other enumerations and arguments.