S03F0991. MOON v. MOON.
(589 SE2d 76)

BENHAM, Justice.

Appellant Margaret Moon filed a complaint for divorce in the Superior Court of Fayette County on June 27, 1997, and immediately moved to Kansas with the couple's two children. Appellant was designated the temporary primary physical custodian of the children in an order filed in November 1997; appellee David Moon was awarded the temporary primary legal and physical custody of the children in December 2000. A bench trial took place May 17, 18, and June 22, 1999, and December 7 and 12, 2001. The final judgment and decree of divorce awarded sole legal and physical custody of the children to Mr. Moon, found Mrs. Moon to be an unfit parent, required her to pay child support of thirteen percent of her gross monthly income or at

least $229.71 for each child,[1] made her responsible for one-half of the children's uninsured medical costs and all of the children's uninsured psychiatric, psychological, or counseling expenses, required her to maintain life insurance policies of $25,000 payable to each child, and placed restrictions upon the exercise of the visitation awarded her.[2] Mrs. Moon's motion for new trial was denied by the trial court, and we granted her application for discretionary review of the trial court's judgment.

1. Mrs. Moon contends the trial court committed reversible error when it refused to permit Mrs. Moon to present the expert testimony of the psychologist who treated the couple's son. The trial court based its ruling on the fact that Mrs. Moon had not identified the psychologist as an expert she intended to call at trial in her responses to Mr. Moon's interrogatories requesting such information. See OCGA § 9-11-26 (b) (4) (A) (i). Generally, in order to obtain review of a ruling excluding testimony, it must be shown what testimony was expected of the witness. *Anderson v. Jarriel*, 224 Ga. 495 (3) (162 SE2d 322) (1968). When the trial court announced that the expert would not be permitted to testify, Mrs. Moon did not make a proffer of the content of the excluded witness's testimony. Having failed to show what testimony was expected of the witness, Mrs. Moon is not entitled to review of the trial court's ruling excluding the testimony. Id.

2. Mrs. Moon next contends the trial court erred when it declined to hear the testimony of the couple's 14-year-old daughter and 13-year-old son at the final hearing on the petition for divorce. OCGA § 19-9-1 (a) (3) (A) provides that a child who has reached the age of 14 "shall have the right to select the parent with whom he or she desires to live. The child's selection shall be controlling, unless the parent so selected is determined not to be a fit and proper person to have the custody of the child." OCGA § 19-9-1 (a) (3) (B) requires the trial court "to consider the desires, if any, and educational needs of the child [who has reached the age of at least 11 but not 14 years] in determining which parent shall have custody. . . ." The trial court based its ruling on Mrs. Moon's failure to comply with Uniform Superior Court Rule 24.5 (B), which requires leave of court in order for minor children of the parties to testify at a temporary hearing. Any error in failing to have heard from the children during the final hearing is rendered harmless by the trial court's determination that Mrs.

---

[1] The trial court found Mrs. Moon's gross monthly income to be approximately $1,767 and noted that the applicable range of support under the Georgia Child Support Guidelines for two children was 23-28 percent of the payor's gross monthly income.

[2] Mrs. Moon's visitation was subject to the continuous supervision of the Fayette County Department of Family and Children Services or its designee, and she was required to post a $100,000 bond and present documentation of the bond to Mr. Moon prior to the period of visitation.

Moon was unfit, since the 14-year-old child's statutory right to choose her custodial parent is not controlling when the parent chosen is declared unfit and the 13-year-old child's statutory right to have his desires considered by the trial court is limited by the trial court's statutory right to have complete discretion in assigning custody. Furthermore, we note that no proffer was made regarding the content of the children's testimony.

3. Mrs. Moon next takes issue with the imposition of the requirement that she post a $100,000 bond as a prerequisite to her exercise of her visitation rights. "The bond . . . merely assures that appellant will comply with the terms of the court's order and return the children . . . at the expiration of the visitation period." *Dearman v. Rhoden*, 235 Ga. 457 (5) (219 SE2d 704) (1975). Whether to require the posting of a bond by Mrs. Moon to assure the return of the children is a matter within the trial court's discretion (*Pruitt v. Butterfield*, 189 Ga. 593, 595 (6 SE2d 786) (1940)), and, given Mrs. Moon's earlier refusal to return the children to Georgia as ordered by courts in both Georgia and Kansas, we see no abuse in the trial court's discretion.

4. Mrs. Moon next sees error in the trial court's dual requirement that her visitation with her children be supervised as well as be preceded by the posting of the $100,000 bond. Supervision of visitation serves as a means to allay concerns the parent might abduct the child. *Chandler v. Chandler*, 261 Ga. 598 (1) (409 SE2d 203) (1991). It is within the trial court's discretion to require supervision of a noncustodial parent's exercise of visitation rights. *Gunnells v. Gunnells*, 225 Ga. 188 (2) (167 SE2d 138) (1969). In light of Mrs. Moon's history of removing the children from Georgia and refusing to disclose their location to the court during the pendency of the divorce proceedings, we conclude the trial court did not err in requiring supervision.

5. Mrs. Moon maintains the trial court's award of child support exceeds the statutory guidelines without written findings of special circumstances to warrant departure from the guidelines. See OCGA § 19-6-15 (c). In its order, the trial court found Mrs. Moon had a gross monthly income of approximately $1,767 and Mr. Moon's gross monthly income was approximately $3,429. The trial court ordered Mrs. Moon to pay as child support an amount equal to 13 percent of her gross monthly income for each of the two children, with payment no less than $229.71 per child, making her total monthly child support payment 26 percent of her current gross monthly income.[3]

---

[3] As noted earlier, Mrs. Moon is also required to maintain two $25,000 life insurance policies for the benefit of her children. "The amount of the premium for such life insurance shall be counted as a part of the support ordered pursuant to the provisions of Code Section 19-6-15 [the Child Support Guidelines]. . . ." OCGA § 19-6-34 (b). See also *Esser v. Esser*,

Under the Child Support Guidelines, the applicable range of percentages of gross income to be considered when two children are involved is 23-28 percent. OCGA § 19-6-15 (b) (5).

Mrs. Moon contends the payments set by the trial court, when combined with the requirement she pay one-half of uninsured medical expenses and all of the uninsured psychiatric, psychological, and counseling expenses, have the possibility of exceeding the statutory guidelines and must be overturned since there are no written findings supporting an award in excess of the Guidelines. A child's extraordinary medical costs is a special circumstance to examine when considering whether the statutory Guidelines' presumptive amount is excessive or inadequate. OCGA § 19-6-15 (c) (2). Inasmuch as it is unknown whether the children will incur amounts of uninsured medical expenses and uninsured counseling expenses so as to constitute "extraordinary medical costs," the mere possibility of such expenses is not sufficient at this juncture to support a finding that the award of child support departs from the Guidelines. Mrs. Moon also maintains it is improper for the trial court to set a minimum monthly payment amount, contending it will require payments in excess of the Guidelines should her gross monthly income decrease in the future. OCGA § 19-6-15 (a) requires the trial court to "specify in what amount and from which party the minor children are entitled to permanent support." Accordingly, the trial court did not err when it set out the actual amount of child support to be paid by Mrs. Moon. The child support requirement does not preclude Mrs. Moon from seeking downward modification of her support obligation should she experience in the future a reduction in income that makes her child support payments fall outside the Guidelines. *Jarrett v. Jarrett*, 259 Ga. 560 (2) (385 SE2d 279) (1989). See also OCGA § 19-6-19.

6. Lastly, Mrs. Moon contends the trial court's award of $14,300 in attorney fees to Mr. Moon was not based on sufficient evidence. Without stating the basis for its award, the trial court determined that Mr. Moon should be paid $6,800 attorney fees for the litigation that took place in Kansas and $7,500 for legal services rendered in Georgia. During the bench trial, Mr. Moon testified he had hired attorneys in Kansas to represent him in litigation filed there by Mrs. Moon, he had paid the Kansas attorneys "between $5 to $7,000" and owed them an additional $1,800. At the conclusion of the bench trial, the trial court asked Mr. Moon to present evidence of the amount of attorney fees he had incurred in the divorce litigation in Georgia.

---

277 Ga. 97 (586 SE2d 627) (2003). Should the monthly amount of the premiums for the policies, together with the monthly child support payment of $459.42, exceed 28 percent of Mrs. Moon's monthly gross income, the trial court must make written findings justifying the variation from the Guidelines. OCGA § 19-6-15 (b) (5).

Counsel informed the court they were seeking $7,500 to cover the "numerous hearings" seeking visitation, the discovery process, the temporary hearing, and the four days of trial. Mrs. Moon's counsel declined the opportunity to cross-examine the attorney presenting the evidence.

Generally, an award of attorney fees is not available in Georgia unless authorized by statute or contract. *Cary v. Guiragossian*, 270 Ga. 192 (4) (508 SE2d 403) (1998). OCGA § 19-6-2 (a) (1) authorizes the grant of attorney fees in a divorce action "[w]ithin the sound discretion of the court, except that the court shall consider the financial circumstances of both parties as a part of its determination of the amount of attorney's fees, if any, to be allowed against either party. . . ." OCGA § 9-15-14 (b) authorizes an award of "reasonable and necessary" attorney fees upon a finding that an action or any part thereof "lacked substantial justification, . . . was interposed for delay or harassment, or . . . an attorney or party unnecessarily expanded the proceeding by other improper conduct. . . ." The purpose of an award of attorney fees pursuant to § 19-6-2 is "to ensure effective representation of both spouses so that all issues can be fully and fairly resolved." *Johnson v. Johnson*, 260 Ga. 443, 444 (396 SE2d 234) (1990). The damages authorized by § 9-15-14 "are intended not merely to punish or deter litigation abuses but also to recompense litigants who are forced to expend their resources in contending with [abusive litigation]." *Ferguson v. City of Doraville*, 186 Ga. App. 430, 440 (on MFR) (367 SE2d 551) (1988), overruled on other grounds, *Vogtle v. Coleman*, 259 Ga. 115 (376 SE2d 861) (1989). If the award of attorney fees to Mr. Moon was predicated on OCGA § 9-15-14, it must be vacated because the findings necessary to support such an award were not made. If the award was predicated on OCGA § 19-6-2, it must be vacated because the only evidence of the parties' financial circumstances contained in the trial court's order is the parties' gross monthly income which shows that Mrs. Moon has one-half the income of Mr. Moon. Such evidence does not support the conclusion that the award of attorney fees was to ensure that the recipient spouse could afford effective representation.[4] Accordingly, the case is remanded to the trial court for a statement of the statutory basis for the award of attorney fees and any finding that must be made to support it.

---

[4] If the award was predicated on OCGA § 19-6-2, we note that "direct testimony as to the value of legal services is not required in determining attorney fees in those cases involving alimony. [Cit.] . . . [A]s experienced and able lawyers, trial judges are quite capable of placing a value on the legal services rendered by an attorney in a divorce action. [Cits.]" *Webster v. Webster*, 250 Ga. 57, 58 (295 SE2d 828) (1982). In addition, an award of attorney fees pursuant to § 19-6-2 is not predicated upon a finding of misconduct of a party. *In the Interest of S. K. R.*, 229 Ga. App. 652, n. 2 (494 SE2d 558) (1997).

*Judgment affirmed in part, reversed in part, and remanded with direction. All the Justices concur.*

DECIDED NOVEMBER 17, 2003.

*Gibson, Deal & Fletcher, William A. Fletcher, Jr., Michael R. Dunham*, for appellant.

*McNally, Fox & Grant, Patrick J. Fox*, for appellee.