301 Ga. 218
FINAL COPY

S17F0674. WILLIAMS v. WILLIAMS.

BOGGS, Justice.

Appellant Nikita Denise Williams (Wife) and appellee Byron J. Williams (Husband) were divorced in June 2015. The final judgment and decree awarded sole legal and physical custody of their minor child to Husband, and granted Wife supervised visitation. We granted Wife's application for discretionary appeal to consider whether the child custody award should be vacated for the failure of the trial court to incorporate a permanent parenting plan. We conclude that the final judgment and decree must be vacated in part and the case remanded on this ground. We also vacate the award of attorney fees for the court, upon remand, to make the necessary findings of fact for the award of attorney fees to Husband.

Wife filed a complaint for divorce on November 4, 2013. On the same day, she filed a motion for emergency custody requesting ex parte relief and an emergency hearing. In this filing, she claimed that Husband had taken the minor

child from the marital residence and refused to allow her to see him. She also claimed that Husband had a history of domestic violence, including a pending charge of simple assault, and mental health issues. In response, the trial court awarded Wife temporary primary legal and physical custody of the child and scheduled a hearing for December 3, 2013. Husband filed an answer to Wife's complaint, a counterclaim for divorce, and a response to Wife's emergency motion denying the allegations. The hearing on the matter was reset to December 10, 2013.

At the December hearing, Wife's counsel failed to appear at the calendar call, although the court noted that counsel filed an untimely conflict letter. Wife appeared at the calendar call, but was not present when the case was called by the court and had not been excused. Following the hearing, the court ordered that Husband have visitation with the child every Saturday at a church, and set a hearing on the issues raised in Wife's ex parte request for custody "as well as temporary issues" for January 14, 2014. Prior to this hearing however, Husband filed a motion for contempt for Wife's refusal to allow him visitation as ordered.

On January 15, 2014, following a hearing, the trial court entered a temporary order awarding the parties joint legal and physical custody of the

minor child, and ordering that they exchange the child each week, with Husband paying Wife $40 per week for child support. On December 29, 2014, the trial court entered a temporary consent order wherein the parties agreed to a holiday visitation schedule, the location where the child was to be exchanged, the allocation of home appliances, and the termination of Husband's child support payments. The order also provided that the parties would share custody of the child on a week-to-week basis.

Following a bench trial, the trial court, on June 9, 2015, entered a final judgment and decree awarding legal and physical custody of the child to Husband, granting Wife supervised visitation, awarding Husband child support and attorney fees, and requiring that Wife reimburse Husband for marital funds she retained. The order also required Wife to have a full and complete psychological evaluation performed and filed with the court in the event she desired to file any modification of her visitation rights.

Wife filed a motion and an amended motion for new trial. Husband filed a response to Wife's motions and a counterclaim for contempt alleging that Wife failed to make child support payments and pay attorney fees as ordered in the final judgment and decree, and asserting that Wife had interfered with his award

of custody by informing the child's school that the child was deceased. The trial court denied Wife's motion for new trial on January 25, 2016.

1. Wife argues that the trial court denied her any meaningful visitation by failing to set forth specific visitation and leaving the visitation to the discretion of a third party. In deciding visitation,

> the trial court has very broad discretion, looking always to the best interest of the child. When the trial court has exercised that discretion, this court will not interfere unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, this court will not find there was an abuse of discretion.

(Citations and punctuation omitted.) Bishop v. Baumgartner, 292 Ga. 460, 462 (738 SE2d 604) (2013).

The final judgment and decree provided that Wife "shall have ONLY SUPERVISED visitation TWICE per month at St. Julian's [Episcopal Church] in Douglas County. Plaintiff and Defendant shall cooperate with St. Julian's i[n] setting up the [Wife's] bi-monthly visits." In granting Husband custody of the child, the trial court found that Wife falsely accused Husband of abusing the child and observed that it was "afraid [Husband] would never get to exercise visitation with the child." The court noted in denying Wife's motion for new

4

trial, that she repeatedly "wi[ld]ly exaggerated" or falsely accused Husband of family violence, and that her "unexplained bitterness as well as her sudden launching of a concerted vendetta against Husband . . . started early on in the marriage and was on display throughout this litigation." The court also found that Wife kept the child from Husband without reason "creating unnecessary drama when the minor child was in her care[,] scaring the minor child, and delaying and stalling, all to the point that not one but two incarceration orders against Wife had to be issued" for her to produce the child.

Without asserting that she has been denied any visitation, Wife essentially contends that she was *effectively* denied visitation because the court failed to set forth a specific schedule and left visitation to the discretion of a third party. But we find no authority requiring the trial court to set specific dates and times in an award of visitation,[1] and the record here shows that visitation was not left to the sole discretion of a third party. The cases Wife cites in support of her argument

[1] We note, however, that a specific time of day must be included in a parenting plan with regard to holidays, birthdays, vacations, school breaks, and other special occasions, unless otherwise ordered by the court. See OCGA § 19-9-1 (b) (2) (B). See also subsection (b) (2) (A) (parenting plan shall also include, unless otherwise ordered by the court, "[w]here and when a child will be in each parent's physical care, designating where the child will spend each day of the year").

are distinguishable. Shook v. Shook, 242 Ga. 55 (247 SE2d 855) (1978), was an appeal of a denied contempt petition. There, the final judgment and decree provided that the father of the minor children would have "reasonable" visitation privileges. Id. After being denied visitation under this arrangement, the husband filed a petition for contempt. Id. at 55-56. Specifically, husband sought to modify the ordered visitation to provide for specific dates and times of visitation. Id. at 56. The court denied his request. Id. We held that the trial court, in its contempt order, abused its discretion in refusing to specify times, places and circumstances for visitation because the parties' inability to agree between themselves on "reasonable" visitation resulted in an effective denial of visitation. Id. at 56 (2).

In Chandler v. Chandler, 261 Ga. 598 (409 SE2d 203) (1991), in a change of custody/contempt action, after the mother took the minor child out of the state without notice to the father in violation of the divorce decree, the trial court ordered that the mother have "'no rights of visitation with the child except that she may visit with the child at such times and places and on such conditions as are agreed to in writing by the parties.'" Id. at 599. We held that the trial court abused its discretion in fashioning a solution effectively denying the mother any

right to visit her daughter. Id. at 599 (1). And we noted that "[l]ess extreme arrangements, including limited and supervised visitation, could be instituted to satisfy the trial court's concerns that appellant might abduct the child if granted visitation." Id.

In this case, the court did not merely order "reasonable" visitation, nor did it leave visitation *solely* to the unfettered discretion of the custodial parent or to a third party. The court, within its discretion, required that visitation would occur twice per month at a particular location, a local church, with the days and times for those visits to be arranged by the church, in cooperation with Husband and Wife. The court therefore intended the parties to work together in setting up Wife's visitation. This arrangement alone shows no effective denial of visitation.

In contrast, this appeal is from a final decree awarding a *specific* amount of visitation at a *particular* place to Wife, not unspecified "reasonable" visitation as in Shook or visitation only if the parties agree as in Chandler. And Wife has made no showing here that either the church or Husband has denied her the right to bi-monthly visits granted by the court's order. Accordingly, her challenge to the trial court's order, in anticipation that she will be denied

7

visitation, fails. Wife has shown no abuse of the trial court's discretion here.[2]

Wife argues further that prior to the court's order, the parties had sixteen months of successful week-to-week exchanges of the child and there was no evidence to justify restricting her visitation. But the trial court's findings underlying its ruling on visitation are supported by some evidence, including that outlined below in Division 2. We therefore conclude that its ruling granting Wife supervised visitation twice per month was not an abuse of discretion. See Moon v. Moon, 277 Ga. 375, 377 (4) (589 SE2d 76) (2003) (within trial court's discretion to require supervision of non-custodial parent's visitation with child).

2. Wife argues that the trial court erred by relying on evidence from temporary hearings in making its final custody decision without providing notice to the parties. In denying Wife's motion for new trial, the court concluded that the transcript of the final hearing "is replete with evidence that while likely . . . presented in temporary hearings," was brought out again during the final hearing, that it used evidence presented during the final hearing to make its

---

[2] We note that the circumstances here do not involve the trial court's improper delegation to a third party of the responsibility for making decisions regarding *modification or suspension* of visitation. Wrightson v. Wrightson, 266 Ga. 493, 496 (3) (467 SE2d 578) (1996) (judgment provided visitation could be suspended by the child's or appellant's therapist if they determined that appellant was a risk to child).

8

determination, and that the evidence was "substantially unaltered" between the temporary and final hearings. The record supports this conclusion.

Wife presented four witnesses at the final hearing: two neighbors, a "spiritual counselor," and a police sergeant. While some of the evidence presented concerned events that took place prior to the temporary hearing and order in January 2014, there was evidence after that date presented for the trial court's consideration. Wife admitted at the final hearing that in June 2014, she took pictures of the child that she claimed showed bruises and scratches on him after he returned from a visit with Husband, and that she stripped the child of his clothing at each exchange with Husband to examine him for signs of abuse. The trial court viewed those pictures and concluded that they showed no abuse. The record also reveals the court considered Wife's testimony in the final hearing blaming her former lawyers for inappropriate conduct in their representation of her in this action, her admission that she failed to bring the child for the Husband's court-ordered supervised visitation between November 2013 and January 2014, and her failure to make the child available at the final hearing.

Because the record reveals that the trial court relied upon evidence presented at the final hearing, Wife's argument on this ground fails. See Marks

9

v. Soles, 339 Ga. App. 380, 384-385 (1) (793 SE2d 587) (2016) (no showing that court relied on evidence from temporary hearing or that the testimony from numerous witnesses was insufficient to support the court's findings); compare Pace v. Pace, 287 Ga. 899, 900 (700 SE2d 571) (2010) (apparent from final divorce decree and subsequent order denying Wife's motion for new trial that court relied substantially on its memory of unrecorded testimony from temporary hearing in determining custody).

3. Wife argues that the trial court erred in failing to incorporate a permanent parenting plan in the final judgment and decree. This requirement is found in OCGA § 19-9-1 (a). The parties disagree as to whether the current version of this Code section, effective July 1, 2016, applies, or whether the former version in effect at the time of the 2015 bench trial applies. But we need not decide this issue, because both versions provide that the trial court, in a final order involving the custody of a child, "*shall* incorporate a permanent parenting plan." (Emphasis supplied.) OCGA § 19-9-1 (a); former OCGA § 19-9-1 (a).[3]

_____

[3] The current version of OCGA § 19-9-1 (a) provides:

Except when a parent seeks emergency relief for family violence pursuant to Code Section 19-13-3 or 19-13-4, in all cases in which the custody of any child is at issue between the parents, each parent shall prepare a parenting plan or the parties may jointly submit a parenting plan. It shall be in

10

The 2016 amendment to this subsection added that a separate order exclusively devoted to a parenting plan is not required. OCGA § 19-9-1 (a). Subsection (b) of both the current and former Code lists the same information to include in the parenting plan unless otherwise ordered by the court. OCGA § 19-9-1 (b).

The final judgment and decree here does not incorporate a parenting plan. In the order denying Wife's motion for new trial, the court ruled that "the provisions concerning custody and visitation contained in the Final Judgment and Decree are sufficient to be considered a permanent parenting plan

the court's discretion as to when a party shall be required to submit a parenting plan to the court. A parenting plan shall be required for permanent custody and modification actions and in the court's discretion may be required for temporary hearings. The final order in any legal action involving the custody of a child, including modification actions, shall incorporate a permanent parenting plan as further set forth in this Code section; provided, however, that unless otherwise ordered by the court, a separate court order exclusively devoted to a parenting plan shall not be required.

The former subsection provides:

Except when a parent seeks emergency relief for family violence pursuant to Code Section 19-13-3 or 19-13-4, in all cases in which the custody of any child is at issue between the parents, each parent shall prepare a parenting plan or the parties may jointly submit a parenting plan. It shall be in the judge's discretion as to when a party shall be required to submit a parenting plan to the judge. A parenting plan shall be required for permanent custody and modification actions and in the judge's discretion may be required for temporary hearings. The final decree in any legal action involving the custody of a child, including modification actions, shall incorporate a permanent parenting plan.

envisioned by" OCGA § 19-9-1 and Uniform Superior Court Rule 24.10.[4] The court explained further:

> Although in normal circumstances, where there is a history of cooperation between the parties, a parenting plan like that provided for in OCGA § 19-9-1 and set out in Uniform Superior Court Rule 24.10 would have been ordered. However, as noted *supra*, this is the atypical divorce action. Despite Husband's best efforts to cooperate, Wife obstructed the ability of the Court to fashion anything remotely approaching standard visitation.

However, the order with regard to custody and visitation does not satisfy the statutory requirement for a permanent parenting plan, and the failure of a party to cooperate does not create an exception. See McFarlane v. McFarlane, 298 Ga. 361, 362 (2) (782 SE2d 29) (2016) (detailed visitation schedule does not satisfy requirement of a permanent parenting plan). And although Husband points out that Wife did not submit a parenting plan as required under OCGA § 19-9-1 (a), such failure does not relieve the trial court of its duty to incorporate a permanent parenting plan in the final order. Indeed the parenting plan must include several

_____

[4] This rule provides in part:
In all cases involving permanent custody or custody modification (except when a parent seeks emergency relief for family violence), each parent shall prepare and submit a parenting plan, or the parties may jointly submit a parenting plan, as directed by the judge. The parenting plan should be tailored to fit the needs of each individual family but must at a minimum contain the information required by OCGA § 19-9-1 (b). . . .

details beyond custody and visitation, including, among many things, the rights of both parents to access the child's records and information related to education, health, health insurance, extracurricular activities, and religious communications. OCGA § 19-9-1 (b) (1) (D).[5]

Because the trial court failed to incorporate a permanent parenting plan in the final judgment and decree, we vacate the judgment in part and remand this case for compliance with the requirements of OCGA § 19-9-1.

4. Wife asserts that the trial court erred in awarding Husband attorney fees without specifying the basis for the award. She contends that the court failed to indicate whether the fees were awarded pursuant to OCGA § 19-6-2 (a) (1) or OCGA § 9-15-14 (b), and that if made pursuant to OCGA § 19-6-2 (a) (1), the court failed to consider the financial circumstances of both parties.

In his counterclaim for divorce, Husband requested the "costs of maintaining this action including reasonable attorney's fees," and at the final

---

[5] We note that while some aspects of OCGA § 19-9-1 (b) may arguably not be applicable here because Husband was awarded *sole* legal and physical custody of the minor child (see OCGA § 19-9-6 (11) (defining "sole custody")), OCGA § 19-9-1 (a) requires that a parenting plan *shall* be incorporated into the final order in *any* legal action involving the custody of a child, making no exception based upon the type of custody awarded. Moreover, the requirements for the mandated parenting plan include recognitions and rights for *both* parents, regardless of the type of legal and physical custody awarded.

hearing requested attorney fees of no less than $20,000 based on the fact that Wife had been stubbornly litigious, frivolous in her filings, and caused delay. In the final judgment and decree, the trial court found that "the actions of [Wife] in this matter have unnecessarily prolonged this matter and have forced additional attorney fees upon [Husband]. Therefore, [Wife] is herein ORDERED to pay directly to [Husband] $12,000 in attorney fees. Said amount . . . shall be made in 12 equal payments . . . ." Although the court found that Wife had unnecessarily prolonged the matter, implying that the award was made pursuant to OCGA § 9-15-14 (b), in the order on motion for new trial, the court explained that "[a] review of the transcript supports this Court's decision to make the award of attorney's fees pursuant to OCGA § 19-6-2." That Code section provides in part:

> (a) The grant of attorney's fees as a part of the expenses of litigation, made at any time during the pendency of the litigation, whether the action is for alimony, divorce and alimony, or contempt of court arising out of either an alimony case or a divorce and alimony case, including but not limited to contempt of court orders involving property division, child custody, and child visitation rights, shall be:
> (1) Within the sound discretion of the court, except that the court shall consider the financial circumstances of both parties as a part of its determination of the amount of attorney's fees, if any, to be allowed against either party; and

14

(2) A final judgment as to the amount granted, whether the grant is in full or on account, which may be enforced by attachment for contempt of court or by writ of fieri facias, whether the parties subsequently reconcile or not.

. . .

As explained in O'Keefe v. O'Keefe, 285 Ga. 805 (684 SE2d 266) (2009),

> [t]he purpose of an award of attorney fees pursuant to § 19-6-2 is to ensure effective representation of both spouses so that all issues can be fully and fairly resolved. The damages authorized by § 9-15-14 are intended not merely to punish or deter litigation abuses but also to recompense litigants who are forced to expend their resources in contending with abusive litigation.

(Citations and punctuation omitted.) Id. at 806. And we have explained that this Court may review the record to determine the statutory basis of an attorney fees order. Williams v. Becker, 294 Ga. 411, 413 (2) n. 1 (754 SE2d 11) (2014), citing Moon, supra, 277 Ga. at 378 (6).

The trial court stated in the order denying Wife's motion for new trial that it granted attorney fees pursuant to OCGA § 19-6-2. During cross-examination, Wife testified to the income she receives at her two places of employment, and that she pays $326 per month for her car payment. She explained further that she lives with her mother and pays $500 per month to help her with expenses. In the final judgment and decree, the court noted Husband's and Wife's gross monthly

15

incomes in ordering that Wife pay child support, and attached to the judgment was a child support worksheet showing the parties' gross income and expenses related to child care. It is unclear from the court's oral ruling and final judgment and decree whether it considered both parties' financial circumstances,[6] as it made no findings of fact to support an attorney fee award under OCGA § 19-6-2. We therefore vacate the award of attorney fees, and upon remand, the court must make the necessary findings in support of such an award. See, e.g., Thrasher-Starobin v. Starobin, 299 Ga. 12, 13 (785 SE2d 302) (2016) (remand required where court failed to make findings of fact sufficient to support award of fees under either OCGA § 19-6-2 or § 9-15-14); Leggette v. Leggette, 284 Ga. 432, 433 (2) (668 SE2d 251) (2008) (same).

Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.

Decided May 15, 2017.

---

[6] Although the record shows that Husband's counsel filed a "Domestic Relations Financial Affidavit" to be introduced at the final hearing showing Husband's income and expenses, it does not appear that this document was introduced or admitted at the final hearing.

Domestic relations. Douglas Superior Court. Before Judge James.

Candace E. Rader, for appellant.

Tamar O. Faulhaber; James H. Lewis, for appellee.