**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 6, 2022**

# In the Court of Appeals of Georgia

A22A0380. BOWMAN v. ROUSE.

MERCIER, Judge.

In this action regarding her minor daughter, Alisha Bowman ("Mother") contends that the trial court committed numerous errors in its decisions to modify the child support obligations and parenting time schedule of Jamiel Rouse ("Father"). Specifically, Mother maintains that the trial court erred by: (1) modifying Father's parenting time despite the fact that he had not fully utilized the time he had been granted in a previous parenting plan; (2) modifying Father's ongoing child support obligations and calculating past-due amounts pursuant to OCGA § 19-6-15 (j) (1) to reflect Father's loss of income; (3) denying Mother's motion to hold Father in contempt for failing to pay past-due child support at its full original rate; and (4) rejecting Mother's argument that, for purposes of determining prospective child

support, income should be imputed to Father because he voluntarily remained unemployed. For the reasons set forth below, we affirm the trial court's rulings regarding the modification of Father's parenting time, the denial of Mother's contempt motion, and the denial of Mother's request to impute income to Father to determine prospective child support obligations. We also find that, although the trial court properly found OCGA § 19-6-15 (j) (1) to be applicable in this case, the trial court employed that statute incorrectly in its calculation of arrearages owed by Father. As such, we must vacate the trial court's award as it pertains to child support arrearages and remand this case for further proceedings necessary for recalculation of these past-due amounts.

As relevant background information, the record shows that, in 2018, Father was determined to be the legal parent of the couple's child based on related legitimation and paternity petitions filed by the parties. The legitimation/paternity order included both a parenting plan and child support provisions, the latter of which was premised on Father's employment at the time. Under this 2018 parenting plan, the parties share joint legal custody, but Mother has primary physical custody and final decision-making authority for most circumstances. With regard to child support, Father was required to pay $1,191 per month, based on a monthly salary at the time of $7,692.

2

In May 2020, Father was furloughed from his job, and he immediately filed a request for a downward modification of child support to reflect his loss of income. In addition, Father requested a modification of parenting time.[1] Mother was served with the modification action on August 11, 2020. Mother then filed an answer and counterclaim which included dueling requests for modification of child support and modification of parenting time. Mother also moved the trial court to find Father in contempt for his failure to pay his child support obligations at their full rate since the time of his furlough in May 2020. Both parties requested attorney fees.[2] By the time the matter reached the trial court for consideration, Father had been involuntarily terminated from his job.

Following a hearing at which both parties testified, the trial court entered a written order in which it: (1) modified Father's parenting time to address his commuting difficulties to Mother's home and misunderstandings about his daughter's schedule for summer school; (2) modified Father's prospective child support

---

[1] Although Father originally requested a change in custody and a finding of contempt against Mother, he later abandoned those claims.

[2] Mother requested attorney fees pursuant to OCGA §§ 19-9-3 and 9-15-14 (a) and (b), and Father requested attorney fees pursuant to OCGA §§ 19-9-3 (g) and 19-6-5.

3

obligations and calculated arrearages to recognize and reflect his job loss and reduction in income; (3) denied Mother's motion for contempt; and (4) denied the requests for attorney fees filed by both parties. This appeal initiated by Mother followed.

1. Mother first contends that the trial court erred by modifying Father's parenting time, arguing that the trial court had no authority to do so because Father had not been fully utilizing the time granted to him in the 2018 parenting plan. We disagree.

OCGA § 19-9-3 (b) provides that

[i]n any case in which a judgment awarding the custody of a child has been entered, on the motion of any party or on the motion of the judge, that portion of the judgment effecting visitation rights between the parties and their child or parenting time may be subject to review and modification or alteration without the necessity of any showing of a change in any material conditions and circumstances of either party or the child, provided that the review and modification or alteration shall not be had more often than once in each two-year period following the date of entry of the judgment.

"[I]f reasonable evidence exists in the record to support the trial court's decision to change visitation rights, then the decision of that court will stand . . . absent abuse of discretion." *Cross v. Ivester*, 315 Ga. App. 760, 766 (2) (728 SE2d 299) (2012) (citation and punctuation omitted). "Further, it is the express policy of this state to

4

encourage contact between a child and the non-custodial . . . parent. OCGA § 19-9-3 (d)." *In the Interest of R. E. W.*, 220 Ga. App. 861, 862 (471 SE2d 6) (1996). See also *Gildar v. Gildar*, 309 Ga. App. 730, 731-732 (710 SE2d 913) (2011) (applying abuse of discretion standard to trial court's decision made pursuant to OCGA § 19-9-3 (b)).

Here, there was no abuse of discretion. Although the trial court's order recognized that Father had not utilized all of his parenting time under the 2018 parenting plan, it also recognized that there were certain practical hindrances preventing Father from doing so. The trial court explained:

> It is undisputed that the Father failed to exercise all available parenting time. First, the Father exercised most, if not all, of his weekend time with the child since 2018. Second, he finds it difficult to accomplish weekday time, which is designated as the second and fourth Tuesdays and Thursdays from after daycare until 7:30 p.m. The Father testified that exercising weekday time was difficult due to it was only two hours, the parties living about 23 miles apart (Sandy Springs and Lithonia), his work schedule, and traffic conditions (one way could take 45 minutes). Third, the Father failed to exercise all of the holiday and summer parenting time due, in part, to the parties' difficulty in communicating and to the Father's misinterpretation of his rights under the Parenting Plan.

For these reasons, the trial court modified Father's weekday visitation to include overnight stays and clarified his summer visitation schedule to provide two consecutive weeks of parenting time. Making these modifications was not an abuse

5

of the trial court's wide discretion, as "reasonable evidence exists in the record to support the trial court's decision to change visitation rights." *Cross*, supra.

Nonetheless, Mother argues that the trial court automatically abused its discretion by granting Father a different parenting time schedule when he had not been fully utilizing the prior schedule. But the determinations of visitation and parenting time are not generally subject to such automatic considerations. To the contrary, it is a matter of wide discretion, focused on what is best for the child in any given situation. *Gildar*, supra, 309 Ga. App. at 731-732. See also *Williams v. Williams*, 301 Ga. 218 (800 SE2d 282) (2017). Here, as stated, reasonable evidence exists to support the trial court's decision to modify parenting time. As such, that decision must stand based upon the required deferential standard of review. Id.

Additionally, to the extent that Mother now contends that the trial court wholly failed to take into account the best interests of the child in assigning parenting time, the record belies her assertion. While the trial court did not make a specific statement about the child's best interests in those exact words (and Mother did not request that the trial court make any findings), the trial court did indicate in its order that the child's welfare guided its decision regarding parenting time. For example, in

6

considering the summer schedule, the trial court indicated that it was attempting to "maintain[] ample consistent contact with each parent to ensure [a] strong and healthy family relationship[]." And, at the conclusion of the hearing on the motions, the trial court stated that its decision would be premised on the best interests of the child. So, despite Mother's contention, the record indicates that the trial court *did* consider the child's best interests in reaching its conclusion, and its analysis comports with the goals of OCGA § 19-9-3 (d).

2. In two related enumerations of error, Mother contends that the trial court erred by calculating Father's child support arrearages pursuant to OCGA § 19-6-15 (j), thereby recognizing Father's loss of income stemming from his furlough and eventual termination.[3] While we disagree with Mother's contention that the trial court

---

[3] This statute provides:
(j) Involuntary loss of income.
(1) In the event a parent suffers an involuntary termination of employment, has an extended involuntary loss of average weekly hours, is involved in an organized strike, incurs a loss of health, becomes incarcerated, or similar involuntary adversity resulting in a loss of income of 25 percent or more, then the portion of child support attributable to lost income shall not accrue from the date of the service of the petition for modification, provided that service is made on the other parent. It shall not be considered an involuntary termination of employment if the parent has left the employer without good cause in connection with the parent's most recent work.
(2) In the event a modification action is filed pursuant to this subsection,

7

erred by applying this statute *at all*, we do find that the trial court applied the statute incorrectly in some respects, as more fully set forth below.

According to Father's tax return, he earned $78,143 in 2020. While Father's return does appear to include a $27,679 severance payment he received in installments over 16 weeks following his termination, it does not include $17,100 of unemployment benefits he collected. So, Father's full 2020 income was over $95,000, though he suffered economic hardship during the period of his furlough, when he relied solely on unemployment benefits.

By January 2021, Father's severance payments ended, and Father relied again on unemployment benefits totaling $558 per week. He also received a final bonus of $5,901 on March 17, 2021. At the time that the trial court considered Father's request for downward modification of ongoing child support, Father remained unemployed. Based on these numbers, the trial court determined that, at the time of its order, Father had a gross monthly income of $2,909 and that Father's loss of income exceeded 25

the court shall make every effort to expedite hearing such action.
(3) The court may, at its discretion, phase in the new child support award over a period of up to one year with the phasing in being largely evenly distributed with at least an initial immediate adjustment of not less than 25 percent of the difference and at least one intermediate adjustment prior to the final adjustment at the end of the phase-in period.

percent, as required for the application of OCGA § 19-6-15 (j) to calculate arrearages. For this reason, the trial court made a downward modification of Father's ongoing child support obligation to $598 per month, and it calculated Father's arrearages to reflect his loss of income.

(a) Mother initially contends that, because Father did not sufficiently plead OCGA § 19-6-15 (j) (1) in his request for modification, she was not given sufficient notice that it would be raised and the trial court therefore erred by considering it *at all*. Father's pleadings, however, set forth the circumstances surrounding his loss of income in detail and include the following prayers for relief: "[t]hat child support stops accruing at the original rate once served upon [Mother]; and [t]hat the prior child support order be modified as determined in OCGA § 19-6-15." So, Father's filing describes his situation, cites the overall general statute involved, and generally tracks the language of the specific subdivision of that statute, which states "the portion of child support attributable to lost income shall not accrue from the date of the service of the petition for modification . . . on the other parent." OCGA § 19-6-15 (j) (1). This was a sufficient "demand for judgment for the relief [under OCGA § 19-6-15 (j) (1)] to which [Father] deem[ed] himself entitled," OCGA § 9-11-8 (a) (2) (B), and put Mother on notice of Father's claim. And, even a cursory review of the hearing

9

transcript indicates that it did just that. Mother was not surprised by or unprepared for Father's reliance on OCGA § 19-6-15 (j) (1). To the contrary, she had accumulated a significant amount of evidence to counter Father's claims, which she argued and placed before the trial court.

Mother's reliance on *Bagwell v. Bagwell*, 290 Ga. 378 (721 SE2d 847) (2012), does not alter this result. In *Bagwell*, the father filed a petition for modification of his child support obligation based on reduced income, but he willfully failed to respond to the mother's discovery requests. As a result, the trial court dismissed the father's petition. Almost immediately, the father filed a second successive petition raising the same claims. Recognizing that OCGA § 19-6-15 (k) (2) prohibits the filing of a petition for modification of child support within two years from the date of a final order on a previous petition to modify filed by the same parent, our Supreme Court found that the father's successive petition should be dismissed, and it rejected the father's contention that he was entitled to pursue the action under OCGA § 19-6-15 (j) (1), which he had not invoked in his second petition. *Bagwell*, supra at 379-381. Moreover, because the father raised identical claims in both his first and second petition, the latter was barred by res judicata. Id. at 381. In summation, our Supreme Court found: "Permitting this successive modification action to survive is to reward

10

a litigant for what has been determined to be the litigant's wilful and intentional refusal to comply with the ordinary court procedures and processes which the litigant's own suit has set in motion, and thereby, is tantamount to abuse of the judicial system." Id. at 381-382. The facts, concerns, and holding in *Bagwell*, therefore, are distinguishable from the present case, which does include at least a general, but identifiable, reference to the language of OCGA § 19-6-15 (j) (1) and neither implicates OCGA § 19-6-15 (k) (2) nor involves any attempt to abuse the judicial system.

(b) Mother next contends that, as a general matter, a trial court may not modify child support payments retroactively. While it is true that a child support obligation may not be retroactively modified,[4] OCGA § 19-6-15 (j) (1) allows a trial court to take into account a party's loss of income while considering the amount of *arrearages* that may be due to that loss.

> [When a] trial court [is] addressing both a petition for modification and a petition for contempt [as it was in this case], it [is] empowered to not only address the amount of child support due going forward, but also to calculate the amount of child support arrearage. Accordingly, the analysis presented in *Morgan v. Bunzendahl*, 316 Ga. App. 338, 340 (2)

---

[4] See OCGA § 19-6-17 (e) (3) ("Any payment or installment of support under any child support order is, on and after the date due . . . [n]ot subject to retroactive modification.").

11

(729 SE2d 476) (2012) (physical precedent only), pertaining to OCGA § 19-6-15 (j) (1) is correct; the modification of child support is prospective only, but if a question is presented on a petition for contempt, any amount of arrearages due that would be due under the prior order, but were attributable to lost income, do not accrue from the date of service of the petition.

*Friday v. Friday*, 294 Ga. 687, 691 (2) (755 SE2d 707) (2014).

(c) Mother further contends that, even if the trial court in this case had the authority to consider OCGA § 19-6-15 (j) (1), it should not have been applied to Father because he had not suffered a 25 percent loss of income at the time that his petition for modification was filed – he was only anticipating a loss of income due to a furlough. But nothing in OCGA § 19-6-15 (j) (1) indicates that the loss must be measured *only* on the date when a petition is filed, and, at the time the trial court considered the case, Father had been involuntarily terminated from his prior employment. The statute requires a loss of income of 25 percent or more based on an involuntary termination of employment, an extended involuntary loss of average weekly hours, an organized strike, a loss of health, incarceration, or similar involuntary adversities. It does not tie these adversities to any specific filing date, and Mother's interpretation of the statute would require that the statute be rewritten to include an additional term. This Court, however, does not have authority to rewrite

12

statutes. See, e.g., *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006). As such, Mother's contention in this regard is untenable.

(d) As previously mentioned, however, OCGA § 19-6-15 (j) (1) explicitly states that "the portion of child support attributable to lost income shall not accrue *from the date of the service of the petition for modification*, provided that service is made on the other parent." (emphasis supplied). It is undisputed that the date of service of Father's petition on Mother was August 11, 2020. Therefore, OCGA § 19-6-15 (j) (1) could not be applied to Father's arrearages incurred before that date. As Father concedes, the trial court incorrectly applied the statute to the months of June and July 2020. For this reason, the trial court's calculation of arrearages is inaccurate, and its order must be vacated and remanded for recalculation of Father's past-due child support obligation, with direction that the provisions of OCGA § 19-6-15 (j) (1) may not be applied to Father's arrearages accumulating prior to August 11, 2020.[5]

3. Mother next maintains that the trial court erred by denying her motion for contempt, but her claim is largely premised on the contention that Father owed the

[5] Father concedes this error. Father also contends that the trial court made certain mathematical miscalculations in determining Father's monthly income for the last sixteen weeks of 2020 for purposes of calculating arrearages. Father may raise this issue with the trial court on remand.

13

full amount of child support required by the 2018 order. As we have found otherwise, this contention has no tenable basis. And, in any event, "[t]o hold in contempt, the court must find that there was a wilful disobedience of the court's decree or judgment." *Higdon v. Higdon*, 321 Ga. App. 260, 263 (1) (c) (739 SE2d 498) (2013) (citation and punctuation omitted). "The trial court's discretion in contempt matters is broad, and its decision will be upheld if there is any evidence to support it." *Turman v. Boleman*, 235 Ga. App. 243, 244 (510 SE2d 532) (1998) (citation and punctuation omitted). Here, there was evidence to support the determination that Father did not willfully disobey his child support obligations, as there was proof provided of his furlough and involuntary termination from his job. Accordingly, the trial court did not err in this respect. Id.

In a related argument, Mother contends that the trial court improperly restricted her presentation of evidence that Father had the ability to pay past-due child support, including evidence of "extravagant spending and purchases of luxury items." But Mother did, in fact, make arguments based on these expenditures at the hearing, and the trial court was aware of them. In addition, Mother submitted exhibits which

14

showed these purchases. So, to the extent that Mother contends that the trial court inhibited her contempt action, her contention fails.[6]

4. Finally, Mother contends that the trial court should have imputed income to Father when considering any downward modification of his ongoing child support obligations. To support this contention, Mother argues that, with his severance package, Father earned more income in 2020 than he did in 2018 and that, after his involuntary termination, he purposefully remained unemployed.

As a general matter, "[g]ross income [for purposes of calculating child support] may include imputed income, if applicable." OCGA § 19-6-15 (b) (1). Pursuant to OCGA § 19-6-15 (f) (4) (A):

> if a parent fails to produce reliable evidence of income, such as tax returns for prior years, check stubs, or other information for determining current ability to pay child support or ability to pay child support in prior years, and the court or the jury has no other reliable evidence of the parent's income or income potential, gross income for the current year may be imputed. When imputing income, the court or the jury shall take into account the specific circumstances of the parent to the extent known, including such factors as the parent's assets, residence, employment and earnings history, job skills, educational attainment, literacy, age, health, criminal record and other employment barriers, and record of seeking work, as well as the local job market, the availability

---

[6] The transcript of the hearing does indicate that the trial court found that, for purposes of establishing Father's income, these purchases were not relevant, and he did not allow Mother to question Father about them for this reason.

15

of employers willing to hire the parent, prevailing earnings level in the local community, and other relevant background factors in the case.

Mother contends that Father failed to prove that he was actively seeking employment, that he made a number of purchases of non-essentials, and that his income fluctuated due to severance payments and unemployment payments. She further contends that these "irregularities" support an argument that Father is willfully unemployed as "contemplated by OCGA § 19-6-15 (f) (4) (D)." But Father testified that, after his job loss, he was actively looking for new employment while attempting to honor the non-compete clause in his separation agreement. The trial court credited this testimony in its decision not to impute income. Mother's assertion that the trial court should have credited her testimony and evidence instead does not alter the outcome of this case. It is fundamental that the determination of credibility is within the exclusive province of the trier of fact, see *Ellis v. Ellis*, 290 Ga. 616, 617 (1) (724 SE2d 384) (2012), and the trial court, the trier of fact in this bench trial, credited Father's testimony. As such, there was evidence supporting the trial court's decision not to impute income, and we find no abuse of discretion in the trial court's decision

16

to make a downward modification. See, e.g., *Marlowe v. Marlowe*, 297 Ga. 116, 118-120 (2) (772 SE2d 647) (2015).[7]

For all of the reasons set forth above, we affirm the trial court's ruling with the exception of its calculation of Father's arrearages, which must be vacated and the case remanded for recalculation in compliance with OCGA § 19-6-15 (j) (1).

*Judgment affirmed in part, vacated in part, and case remanded with direction.* *Dillard, P.J., and Markle, J., concur.*

---

[7] We note that Mother contends that Father has found a new job at this point in time, and the trial court's order in this matter requires Father to "promptly use the Online Child Support Calculator . . . to update [his] gross monthly income." No evidence of this, however, is currently before this Court, and, to the extent that Mother wishes to raise any issues regarding Father's income relating to this alleged new employment, she must pursue it in the trial court.