**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 26, 2024**

# In the Court of Appeals of Georgia

A23A1549. BEALL v. BEALL.

WATKINS, Judge.

In this appeal from a final judgment and decree of divorce, Andrew Paul Beall argues that the trial court erred by denying him any parenting time with his child. For the reasons discussed below, we affirm in part and vacate in part, and remand the case for entry of a revised custody award.

> In deciding visitation, the trial court has very broad discretion, looking always to the best interest of the child. When the trial court has exercised that discretion, [the reviewing] court will not interfere unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, [the appellate] court will not find there was an abuse of discretion.[1]

---

[1] (Citations omitted.) *Williams v. Williams*, 301 Ga. 218, 220 (1) (800 SE2d 282) (2017).

So viewed, the record shows that the Mother and Father were married in 2013, and they adopted a newborn, A. B., in July 2019. In November 2019, the Father began having an extramarital affair with B., a woman he had met at the gym a month or two prior. A. B.'s adoption was finalized on December 18, 2019, and on December 28, the Father announced that he was moving out of the marital residence. He moved in with B. in January 2020. In the spring of 2020, the Father moved back to the marital home in an attempt to reconcile with the Mother. B. threatened to take her own life and, when the Father went to B.'s house to check on her, B. said she had taken several antidepressants and tried to grab the gun he was carrying. A few days later, the Father moved back to B.'s home.

In July 2020, the trial court entered a temporary order reflecting that the parties had reached an agreement on custody for a temporary basis. Under the terms of this order, the Mother had primary custody of A. B. and the Father had visitation for two hours each weekday afternoon and on Sunday. Notably, the consent order provided that "under no circumstances shall the minor child have any contact with [B]." This order stayed in place until the trial court entered the final judgment over a year later.

At his deposition in October 2020, the Father stated that he was seeking joint custody. He reported that he was living with B. and her three children, of whom she had partial custody, in a three-bedroom home. He believed that the home was an appropriate place for A. B. to stay, explaining that A. B. could have a bed in the room where B.'s sons slept when they were in their mother's custody.

After a series of hearings in the summer of 2021, the trial court entered written Findings of Fact noting that the Father was using steroids and human growth hormones and that the Mother, the Father's mother, and the Father's sister had all described the Father as having undergone a radical personality change since he met B. The trial court observed that the Father had moved in with B. only months after meeting her and that the Father's attempt to reconcile with the Mother ended when B. attempted to take her own life. Additionally, the court noted that the Father had renounced his faith and had become completely estranged from his family, who did not approve of his relationship with B., and that he had refused to attend holidays and other milestone events where his family or the Mother's family would be present. The

court also found that B.'s social media posts were "completely at odds" with the lifestyle the Father and Mother had established during their marriage.[2]

The trial court further found that, on multiple occasions, the Father had disregarded the consent temporary order's prohibition of contact between A. B. and B., noting that the Father had included B. in his visits with A. B. by having her meet them at a park or restaurant.[3] Additionally, the Father covered the Mother's doorbell camera with black tape each time he visited A. B. at the marital home, even after the trial court told him to stop.

Based on these facts, the trial court determined that the Father's first priority was his relationship with B., not A. B. The court found the circumstances surrounding the Father's relationship with B. to be concerning, including the resulting conflict with the Father's family and the loss of his support system, and the trial court questioned whether the Father would be able to prioritize A. B.'s needs over B.'s. The

---

[2] The posts submitted into evidence included partially nude photos and sexually explicit language.

[3] At a August 2021 hearing, the Father testified that the last time A. B. came into contact with B. was "a month or two ago[,]" but he admitted that was a lie when the Mother confronted him with photos of himself, A. B., and B. together at a park the day before the hearing.

trial court also identified concerns with B.'s mental health, the Father's inability to recognize the seriousness of B.'s suicide attempt, the Father's personality change, and the Father's use of steroids and human growth hormones. In light of these concerns, the trial court determined that the Mother should have sole custody of A. B. and that the Father should not have any visitation with the child. Notably, the trial court found that supervised visitation would be inappropriate because, given the Father's unwillingness or inability to spend time with A. B. without B., it would only prolong the conflict.

The trial court subsequently entered a final judgment and decree of divorce that incorporated a parenting plan reflecting the court's custody rulings. In addition, the final judgment required the Father to pay child support and maintain health insurance for A. B. The Father filed a motion for new trial, which the trial court denied. This appeal followed.[4]

---

[4] The Father filed an application for discretionary appeal, which we granted. In our order granting the application, we concluded that the Father was entitled to a direct appeal from the judgment of divorce because he was challenging only the custody rulings. That conclusion was incorrect; under *Ford v. Ford*, 347 Ga. App. 233 (818 SE2d 690) (2018), the discretionary appeal procedures apply to this case. Nonetheless, because we granted the Father's application for discretionary review, we have jurisdiction to consider this appeal.

On appeal, the Father argues that the trial court abused its discretion by denying him any parenting time with A. B. In related claims of error, he contends there was no evidence that he was an unfit parent or otherwise posed a risk of harm to A. B., that the trial court should not have denied him all parenting time due to his relationship with a third party — especially in the absence of a finding that the third party posed any risk to the child, and that the trial court failed to consider less restrictive measures, such as supervised visitation, before denying him all parenting time.

As our Supreme Court has repeatedly stated, "[a] divorced parent has a natural right of access to his child awarded to the other parent, and only under exceptional circumstances should the right or privilege be denied."[5] A trial court abuses its discretion if it denies a parent visitation rights without considering whether "[l]ess

---

[5] *Shook v. Shook*, 242 Ga. 55, 56 (2) (247 SE2d 855) (1978) (because the non-custodial parent was not shown to be unfit, the trial court abused its discretion by refusing to specify circumstances for visitation), quoting *Griffin v. Griffin*, 226 Ga. 781, 784 (3) (177 SE2d 696) (1970) (visitation rights cannot be conditioned on payment of child support). See also *Chandler v. Chandler*, 261 Ga. 598, 599 (1) (409 SE2d 203) (1991).

extreme arrangements, including limited and supervised visitation, could be instituted to satisfy the trial court's concerns[.]"[6]

In this case, the trial court's decision to grant the Father no visitation rather than supervised visitation was based on the Father being "unwilling or unable to spend time with [A. B.] without involving [B]." But there is no evidence in the record to support a finding that limiting the Father to supervised visits, rather than unsupervised, would be insufficient to prevent contact between the child and B.

Moreover, although the Father agreed to prevent A. B. from having contact with B. on a temporary basis, he never agreed to do so on a permanent basis. Thus, the trial court was authorized to expand the restriction into a permanent ban only if there was evidence that contact with B. would be harmful to A. B.[7] Nothing in the record

---

[6] *Chandler*, 261 Ga. at 599 (1) (where the trial court was concerned that the non-custodial parent would take the child outside the court's jurisdiction, the court abused its discretion by denying the parent any right to visit her child because a less extreme arrangement would have satisfied the court's concern).

[7] See *Arnold v. Arnold*, 275 Ga. 354 (566 SE2d 679) (2002) ("In the absence of any evidence that exposure to a third party will have an adverse effect on the best interests of the children, a trial court abuses its discretion by prohibiting a parent from exercising his or her custodial rights in that person's presence.").

suggests that the Father and B. engaged in any inappropriate conduct in the presence of A. B., that A. B. was aware of B.'s purportedly improper behavior (including her social media posts), or that mere exposure to B. would be harmful to the child. Given the absence of such a showing, the trial court abused its discretion by conditioning the Father's right to visit A. B. on his willingness to prevent contact between the child and B.

In reaching this conclusion, we acknowledge that, beyond the Father's allowance of contact between A. B. and B., the trial court's custody order identified a number of other concerns relating to the Father's behavior, such as the circumstances surrounding his relationship with B., his estrangement from his family, his personality change, and his use of steroids and growth hormones. But the trial court did not find that the Father was unfit to parent A. B., and there was no evidence that these additional issues had any effect on how the Father interacted with A. B. Consequently, they are not "exceptional circumstances" that would justify denying the Father all access to his child.

> [T]he primary consideration in determining visitation issues is not the sexual mores or behavior of the parent, but whether the child will somehow be harmed by the conduct of the parent. The focus must be on

the needs of the child, not the faults of the parents. In some instances a parent's "immoral conduct" might warrant limitations on the contact between parent and child; but only if it is shown that the child is exposed to the parent's undesirable conduct in such a way that it has or would likely adversely affect the child. And any alleged deleterious effect on the child must be beyond that normally associated with divorce and remarriage.[8]

Ultimately, based on the record before us, we cannot affirm the trial court's decision to award the Father no parenting time. We therefore vacate the portion of the judgment relating to custody and remand this case "for entry of an appropriate award of visitation rights to [the Father]."[9]

*Judgment affirmed in part and vacated in part, and case remanded with direction.*

*Barnes, P. J., concurs, and Land, J., concurs fully and specially.*

---

[8] (Citations and punctuation omitted.) *Beckman v. Beckman*, 362 Ga. App. 748, 752-753 (1) (870 SE2d 66) (2022) (trial court abused its discretion by prohibiting contact between the child and the father's new wife because there was no evidence that mere exposure to the father's new wife would harm the child).

[9] See *Chandler*, 261 Ga. at 599 (1).

A23A1549.  BEALL v. BEALL.

LAND, Judge, fully and specially concurring.

Given the evidence of the Father's personality change, his violation of the trial court's temporary order concerning contact between A. B. and B., and B.'s past conduct, the trial court's order is certainly understandable and presents a close case for our review. However, as the majority explains, our Supreme Court has set a high bar for the denial of all contact between a parent and a child, and the record before us does not support a finding that this bar has been reached in this case. What is missing is evidence that the Father has exposed A. B. to undesirable conduct that has harmed him or is likely to do so. For this reason, I fully concur in the majority opinion. However, I write separately to remind the parties of two things. First, should the circumstances change and either party exposes the minor child to undesirable conduct in a manner that adversely affects him or is likely to do

so, that would present a different situation for the trial court such that it may be justified in significantly curtailing, or even perhaps eliminating, the right of custody and visitation altogether. Second, the trial court has broad power to hold parties in contempt and impose serious sanctions for willful violations of court orders. Court orders are not merely suggestions; they are mandatory obligations that carry significant consequences when violated. For this reason, the parties would be well served to fully comply with the trial court's orders unless and until they are modified or otherwise reversed, vacated, or set aside. A party that chooses to violate a court order simply because they don't like it does so at their peril.